# EXHIBIT E-1

CAUSE NO. _____048-290718-17_____

FILED
TARRANT COUNTY
2/28/2017 3:58:04 PM
THOMAS A. WILDER
DISTRICT CLERK

| | | |
|---|---|---|
| **FLEET OIL AND GAS LTD.,** | § | **IN THE DISTRICT COURT** |
| **5600 ROCKHILL HOMES, LTD.,** | § | |
| **LONGTIDE PROPERTIES, LTD.,** | § | |
| **VLMC INC., AMERICAN** | § | |
| **ROYALTIES, LTD.,** | § | |
| **AMERICAN ROYALTIES- LA,** | § | |
| **LEWISVILLE #7 PARTNERS, LTD. ,** | § | |
| **HUBEND 54, LTD. and** | § | |
| **PARTNERSHIP EQUITY, LTD.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **CHESAPEAKE ENERGY** | § | |
| **CORPORATION, CHESAPEAKE** | § | |
| **OPERATING, INC.,** | § | |
| **CHESAPEAKE OPERATING, L.L.C.,** | § | **TARRANT COUNTY, TEXAS** |
| **CHESAPEAKE** | § | |
| **EXPLORATION,** | § | |
| **L.L.C. as successor by merger to** | § | |
| **CHESAPEAKE EXPLORATION,** | § | |
| **L.P., CHESAPEAKE ENERGY** | § | |
| **MARKETING, INC.,** | § | |
| **and  TOTAL E&P USA, INC.,** | § | |
| | § | |
| **Defendants.** | § | **_____JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Fleet Oil and Gas Ltd., 5600 Rockhill Homes, Ltd., Longtide Properties,

Ltd., VLMC Inc., American Royalties Ltd., American Royalties LA, Lewisville 7 Partners, Ltd.

Hubend 54, Ltd. and Partnership Equity, Ltd. and files this Plaintiffs' Original Petition

complaining of Defendants Chesapeake Energy Corporation, Chesapeake Operating, Inc.,

Chesapeake Operating, L.L.C., Chesapeake Exploration, L.L.C. as successor by merger to

Chesapeake Exploration, L.P., Chesapeake Energy Marketing, Inc., and

Total E&P USA, Inc. (all Defendants herein are collectively referred to as "Defendants") and for cause of action show the following:

## I.   DISCOVERY CONTROL PLAN & RULE 47 STATEMENT

1.01    Pursuant to Texas Rule of Civil Procedure 190, Plaintiff states that discovery in this case should be conducted under a Level 3 Discovery Control Plan.

1.02    Plaintiffs at this time cannot assess accurately a definite limit to the damages it or the Class has sustained or will sustain in the future as a result of Defendants' acts, though the damages from the wrongful production by Defendants are capable of relatively simple calculation from public records and Defendants' records. Given the early state of this litigation, an accurate projection cannot be made regarding the full extent of damages. Plaintiffs make the following representation in compliance with Tex. R. Civ. P. 47(c) to aid in the efficient Court administration. Plaintiff believe that the most reasonable option afforded under Tex. R. Civ. P. 47, at this time, prior to the completion of discovery in the case, is to seek monetary relief in excess of $1,000,000, exclusive of interest and costs, which is the only option that does not require Plaintiffs to select a speculative, arbitrary cap on its damages. Plaintiffs reserve the right to modify or adjust this statement, as the litigation progresses and additional evidence is compiled. Regardless of what Plaintiffs must state for administrative purposes as the amount of damages it seeks pursuant to Tex. R. Civ. P. 47(c), the final determination of damages, if any, is within to the sole province of the jury, based upon the credible evidence presented to the jury at trial.

## II.  PARTIES

2.01    Plaintiffs **Fleet Oil and Gas Ltd., 5600 Rockhill Homes, Ltd., Longtide Properties, Ltd., VLMC Inc., American Royalties Ltd., American Royalties LA,**

**Lewisville 7 Partners, Ltd. Hubend 54, Ltd. and Partnership Equity, Ltd.** are not natural persons who have and maintain as their principal offices 3045 Lackland Road, Fort Worth, Tarrant County, Texas 76116.

2.02   Defendant **Chesapeake Energy Corporation ("Chesapeake Energy" or "CHK")** is a corporation organized under Oklahoma law with its principal place of business at 6100 Western Avenue, Oklahoma City, Oklahoma. It may be served with Citation and the Original Petition through the Secretary of State for the State of Texas by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. During all times material hereto, Chesapeake has been conducting, and continues to conduct, business in Texas.

2.03   Defendant, **Chesapeake Operating, Inc.   ("Chesapeake Operating")**, is a foreign corporation that is a wholly owned subsidiary of Chesapeake Energy. It is an Oklahoma corporation headquartered in Oklahoma City, Oklahoma. Chesapeake Operating does business in Texas. It may receive service through the Secretary of State for the State of Texas by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  During all times material hereto, Chesapeake Operating has been conducting, and continues to conduct, business in Texas.

2.04   Defendant, **Chesapeake Operating L.L.C. ("Chesapeake Operating LLC")**, is a foreign Limited Liability Company that is wholly owned and managed by Chesapeake Energy. It is a Limited Liability Company with its Principal Place of Business in Oklahoma. It may receive service through the Secretary of State for the State of Texas by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. During all times material hereto, Chesapeake Operating LLC has been

conducting, and continues to conduct, business in Texas.

2.05 Defendant, **Chesapeake Exploration, L.L.C.** as successor by merger to Chesapeake Exploration, L.P., ("Chesapeake Exploration"), is a foreign limited liability company and wholly owned subsidiary of Chesapeake Energy. It is organized under Oklahoma law and is headquartered in Oklahoma City, Oklahoma. It may receive service of process through the Secretary of State for the State of Texas by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Chesapeake Exploration, L.L.C. is a successor by merger to Chesapeake Exploration, L.P. Chesapeake Exploration L.L.C. is a limited liability company organized under Oklahoma law. Chesapeake Exploration, L.L.C. is made up of three members, Chesapeake Operating, Inc. (discussed above), Chesapeake E&P Holding Corporation, and Chesapeake Appalachia, L.L.C. Chesapeake E&P Holding Corp. is a corporation organized under Oklahoma law with its principal place of business in Oklahoma. Chesapeake Appalachia, L.L.C. is a limited liability company with Chesapeake Energy Corporation as its sole member. Chesapeake Energy Corporation is a corporation organized under Oklahoma law with its principal place of business in Oklahoma. On information and belief, none of Chesapeake Exploration, L.L.C.'s members or partners has, or are comprised of individuals or entities with, citizenship of Texas, Oregon, North Carolina, Nebraska, Colorado, Virginia, or Arizona.

2.06 Defendant, **Chesapeake Energy Marketing Inc., ("CEMI")** is a foreign corporation and wholly owned subsidiary of Chesapeake Energy. It is an Oklahoma corporation headquartered in Oklahoma City, Oklahoma. It may receive service through the Secretary of State for the State of Texas by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. During all times

material hereto, Chesapeake Energy Marketing has been conducting, and continues to conduct, business in Texas.

2.07   Defendant, **Total E&P USA, Inc.** ("Total") is a Delaware corporation that is headquartered in and has its principal place of business in Houston, Texas. It is both a Delaware citizen and Texas citizen. Total is a "joint venture partner" and percentage working interest owner in Plaintiffs' leases, units and wells in the Barnett Shale including all units and wells that are the substance of this lawsuit. It may receive service through the Secretary of State for the State of Texas by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. During all times material hereto, Total has been conducting, and continues to conduct, business in Texas.

2.08   Defendant **Access Midstream** is a Delaware limited partnership, with a stated address at 525 Central Park Drive, Oklahoma City, Oklahoma 73105. Access Midstream was originally formed as Chesapeake Midstream Partners, L.P. on August 3, 2010.

### III. JURISDICTION AND VENUE

3.01   Plaintiffs' claims arise under the common law of Texas and under the Texas Civil Practice and Remedies Code. This Court, therefore, has subject matter jurisdiction under the Texas Constitution, Article V, § 8.

3.02   This Court has jurisdiction over the cause of action, because the amount in controversy is within the jurisdictional limits of this Court.

3.03   This Court has personal jurisdiction over each Defendant in that each has conducted, and continues to conduct, business in Tarrant and Johnson counties in the State of Texas, and therefore, has sufficient minimum contacts with the State of Texas.

3.04   Venue is proper in Tarrant County, Texas, under Tex. Civ. Prac. & Rem.

Code § 15.002 or because a substantial portion of the events giving rise to the claims in this cause occurred in Tarrant County, Texas and because Defendant Chesapeake Energy Corporation is not a natural person and maintain its principal office in the State of Texas at 100 Pier 1 Place, Fort Worth, Tarrant County, Texas 76102; or because a substantial portion of the events giving rise to the claims in this cause occurred in Tarrant County, Texas. Venue is therefore proper as to all Defendants pursuant to. Tex. Civ. Prac. & Rem. Code § 15.005 because this is a suit in which the Plaintiffs have established proper venue against Defendant Chesapeake Energy Corporation, therefore, this Court also has venue of all the Defendants in all claims or actions, which arise out of the same transactions, occurrences, or series of transactions or occurrences.

## IV. FACTS

4.01    Chesapeake Exploration, LLC ("CELLC"), Chesapeake Energy Marketing, Inc. ("CEMI"), and Chesapeake Operating, Inc. ("COI"), (collectively "Chesapeake Defendants") and Four Sevens Oil Company ("FSOC") entered into or were assigned thousands of leases in Tarrant County, Texas, during the 2007-2009 period.

4.02    These leases are within the "Barnett Shale" formation that covers a large portion of northern Texas and southern Oklahoma.

4.03    Chesapeake Energy managed, directed, and controlled the other Chesapeake Defendants Chesapeake Energy Corp., Chesapeake Operating Inc., Chesapeake Operating L.L.C., Chesapeake Exploration, L.L.C., CEMI, and their assets such that they were mere instrumentalities of each other, and collectively these defendants will sometimes be referred to herein collectively as "Chesapeake."

4.04    In 2007 through 2008, Plaintiffs Fleet Oil and Gas Ltd., 5600 Rockhill Homes,

Ltd., Longtide Properties, Ltd., VLMC Inc., American Royalties Ltd., American Royalties LA, Lewisville 7 Partners, Ltd. Hubend 54, Ltd. and Partnership Equity, Ltd. entered into oil and gas leases that ultimately assigned to CELLC (Plaintiffs' leases and assignments of oil, gas and mineral leases with CELLC are collectively, referred to herein as "the Leases/Assignments"). The Leases/Assignments cover lands, minerals in Tarrant and Johnson Counties in the State of Texas.

4.05    CELLC has wholly-owned subsidiaries including COI which is the operating and paying agent of CELLC and which company administers CELLC's leases for the benefit of (and on behalf of) CELLC, and accounts for the allocable revenues and expenses under CELLC's leases, and, in addition thereto, a subsidiary CEMI which is the first purchaser for the Leases described above and at issue in this case.

4.06    The Leases/Assignments between Plaintiffs and CELLC at issue provide for Plaintiffs to receive royalty interests and drill site overriding royalty interests on all hydrocarbons produced from the lands in which Plaintiffs hold mineral interests based on the proceeds realized by the lessee from the sale of gas computed at the point of sale.

4.07    The Leases do not specify the point of sale, leaving that decision to CELLC, giving due regard to the duty of CELLC to obtain the best current price reasonably available for the gas because of the "proceeds" nature of the Leases.

4.08    Ignoring the duty to obtain the best price available, however, CELLC sold the gas at the wellhead to its wholly-owned subsidiary CEMI and received a price materially lower than CEMI obtains from downstream purchasers, thereby reducing the amount of royalty otherwise payable to the Plaintiffs under the Leases/Assignments between Plaintiffs and CELLC.

4.09    The substance of the transaction was that CEMI was created as a "straw man" for the sole purpose of reducing the royalties paid by CELLC to Plaintiffs and allowing CELLC to pass post-production costs on to Plaintiffs in violation of the express terms under the Leases/Assignments between Plaintiffs and CELLC.

4.10   The Leases/Assignments between Plaintiffs and CELLC provided for royalty interests of the proceeds realized by the lessee from the sale of gas computed at an undefined point of sale.

4.11   The Leases/Assignments also provided that all proceeds accruing to the benefit of lessors should be without deductions for marketing, gathering, storing, separating, transportation and other specified costs.    Texas Courts have discussed the distinctions between a "wellhead" provision and a "proceeds" provision like the ones at issue in this case as the latter creating "an obligation to obtain the best current price reasonably available," as a protection against "proceeds actually received by a lessee [as a result of] fraud or sham" *Union Pacific Resources Group, Inc. v. Hankins,* 111 S.W.3d 69, 72, 74 (Tex. 2003); creating an "implied covenant to reasonably market oil and gas to protect a lessor from the lessee's self-dealing..." and preventing the lessor from "acting in bad faith in selling gas at a rate substantially below market value," *Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 369, 373 (Tex. 2001).

4.12   Consistent with those duties, CELLC had and has an ongoing obligation not to self-deal, and not to engage in a fraud or sham transaction that has the effect of reducing the price applied in calculating Plaintiffs' royalty payments. In violation of that obligation, however, CELLC transfers the gas at the wellhead to its wholly- owned subsidiary CEMI, which company then renders the gas marketable and sells the gas at a much higher

downstream price to an unaffiliated purchaser.

4.13   Plaintiffs' royalty interest payments and drill site overriding royalty payments under the Leases/Assignments should have been calculated from the price paid by the unaffiliated purchaser; however, Plaintiffs' royalty interest payments and drill site overriding royalty payments were instead calculated using the price received by CELLC from CEMI, its wholly owned subsidiary. CELLC, by virtue of its ownership of CEMI, receives proceeds based on the downstream higher price. CELLC and CEMI are unjustly enriched by the wrongful and unlawful reduction in the royalty payments paid to Plaintiffs.

4.14   The sale of the gas by CELLC to CEMI is a sham transaction which should be ignored. The transaction should be ignored, and Plaintiffs should receive a royalty calculated on the price paid by the ultimate purchaser; in other words, the transaction should be treated for what it actually is, a sale by CELLC to an unaffiliated purchaser downstream from the wellhead. That result also gives effect to the parties' agreement in the lease that royalty proceeds accruing to the lessor will not bear any post-production costs in respect to Plaintiffs' royalty interest payments and drill site overriding royalty payments which would have occurred except for the sham transaction by CELLC.

4.15   Plaintiffs bring this action against the Chesapeake Defendants based on the underpayments of royalties under the Leases/Assignments which resulted from the sham transactions engaged in by the Chesapeake Defendants.

### "NO DEDUCTION" OVERRIDES

4.16   Together, the Leases/Assignments entitled the Plaintiffs to a drill site overriding royalty interests for the minerals attributable to the Plaintiffs' the Leases/Assignments.

4.17   Plaintiffs' drill site overriding royalty interests under the Leases/Assignments

---

call for payment to Plaintiffs "without cost, free and clear of all exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances [and such royalty payments] shall bear [their] proportionate share of applicable severance, production, or other taxes assessed against and chargeable to same."

4.18    Any payment by Chesapeake to Plaintiffs with respect to Plaintiffs' drill site overriding royalty interests s under the Leases/Assignments reflects, either directly or indirectly, charges for "exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances" violates the Plaintiffs' Leases/Assignments.

4.19    Chesapeake, directly or indirectly, has unilaterally imposed on Plaintiffs' drill site overriding royalty interests under the Leases/Assignments unlawful charges for "exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances." Such charges exceed Plaintiffs' relevant Plaintiffs' royalty percentage interest and drill site overriding royalty percentage interests "proportionate share of applicable severance, production, or other taxes assessed against and chargeable to same."

4.20    The Leases/Assignments forbid the lessee from deducting, either directly or indirectly, "any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals."

4.21    The Leases/Assignments require, among other requirements, that any such post-production costs are "actually incurred by [Chesapeake Exploration] for the purpose of making

the oil and gas produced [under the Leases/Assignments] ready for sale or use or to move such production to market" before any part of the expense may be borne by the Plaintiffs.

4.22    Chesapeake Exploration did not actually incur any post-production expenses "for the purpose of making the oil and gas produced [under the Leases/Assignments] ready for sale or use or to move such production to market." Any payment by Chesapeake to any lessor under the Leases/Assignments that reflects, either directly or indirectly, "any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals" violates the Leases/Assignments.

4.23    Chesapeake has made payments to the Plaintiffs that reflect, either directly or indirectly, part, if not all, "of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals" from Plaintiffs' The Leases/Assignments.

4.24    Chesapeake, directly or indirectly, has imposed on the Plaintiffs more than $0.75 per Mcf in costs of treating, dehydrating, compressing, processing, and transporting.

4.25    Chesapeake, directly or indirectly, has imposed on Plaintiffs' drill site overriding royalty interests the costs of treating, dehydrating, compressing, processing, and transporting even though such postproduction costs were not: (i) charged at arms-length by an entity unaffiliated with Chesapeake; (ii) actually incurred by Chesapeake for the purpose of making the oil and gas produced ready for sale or use or to move such production to market; or (iii) are incurred by Chesapeake at a location off of the lands covered by the Leases/Assignments.

4.26    The Leases/Assignments require the lessee to separate natural gas liquids,

whether by processing plant or by field separator, from gas produced from the relevant lands. The Leases/Assignments obligate the lessee to provide the processing/separation services "free of all costs" to the relevant lessor.

4.27    The Leases/Assignments require the lessee to deliver to such lessor the lessor's royalty share of any collected natural gas liquids "free of all costs" at the outlet of such processing/separation location as well as the lessor's share of the residue gas. Any payment or delivery of natural gas liquids or residue gas by Chesapeake to any lessor under the Leases/Assignments that reflect any less than the lessor's full royalty share of any natural gas liquid or residue gas violates the provisions of the Leases/Assignments. And any payment or delivery of natural gas liquids or residue gas by Chesapeake to any lessor under the Leases/Assignments that reflects any cost of any processing/separation process violates the provisions of the Leases/Assignments.

4.28    On information and belief, Chesapeake has paid the Plaintiffs less than the percentage due on Plaintiffs' drill site overriding royalty interests under the Leases/Assignments for natural gas liquid or residue gas produced from the relevant lands. On information and belief, Chesapeake has unlawfully imposed on the Plaintiffs the costs of processing/separation processes used on the production from the respective lands.

### MARKET VALUE FOR SALES OF OIL OR LIQUID OR LIQUEFIABLE HYDROCARBONS

4.29    The Leases/Assignments establish a method to calculate market value of oil or liquid or liquefiable hydrocarbons produced from the relevant lands for the purpose of computing royalties. In all cases, the Leases/Assignments provide that, if actual sales of oil or liquid or liquefiable hydrocarbons produced from the relevant lands meet certain criteria, those actual sales will set the market value (for the purpose of computing royalties).

4.30    If any actual sale fails to meet the listed criteria, the Leases/Assignments set the market value (for the purpose of computing royalties) of oil or liquid or liquefiable hydrocarbons produced from the relevant lands by calculating "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance." Where the arithmetical average method of calculating market value applies to the sale of oil or liquid or liquefiable hydrocarbons produced from the relevant lands. The Leases/Assignments provide that, to the extent "prices used in determining market value . . . are under contracts or arrangements making deduction for any of the expenses of production, gathering, dehydration, compressing, transporting, manufacturing, processing, treating or marketing of such oil, liquid or liquefiable hydrocarbons or gas, then such deduction shall be added back into the prices for the purposes of calculating market value for the payment of royalties to the end that Lessor's royalty shall not be charged directly or indirectly with any such expenses, except as expressly provided in this Lease."

4.31    On information and belief, none of Chesapeake Exploration's actual sales of oil or liquid or liquefiable hydrocarbons produced from the relevant lands meet the criteria listed in the Leases/Assignments for deeming the sale price the market value (for the purpose of computing royalties).

a.    On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of oil or liquid or liquefiable hydrocarbons produced from the relevant lands on a month to month basis.

b.    On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of oil or liquid or liquefiable hydrocarbons produced from the relevant lands to a purchaser that is not an affiliate (as defined in the relevant leases) of Chesapeake Exploration.

c.  On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of oil or liquid or liquefiable hydrocarbons produced from the relevant lands at a price arrived at by arms-length dealing between the Chesapeake Exploration and the purchaser(s).

d.  On information and belief, the price paid by the purchaser(s) for Chesapeake Exploration's share of oil or liquid or liquefiable hydrocarbons produced from the relevant lands has not been and is not now the only consideration for such sale.

4.32   Chesapeake has not paid the Plaintiffs' royalty interest payments and drill site overriding royalty payments under the Leases/Assignments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance."

4.33   To the extent Chesapeake has paid the Plaintiffs' royalty interests payments and drill site overriding royalty interests payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance," Chesapeake has failed to adjust such prices to eliminate deductions forbidden in the Leases/Assignments. Chesapeake's failure to pay royalties for oil or liquid or liquefiable hydrocarbons produced from the relevant lands as described above violates the Leases/Assignments.

4.34   Chesapeake's failure to pay the Plaintiffs' royalty interests payments and drill site overriding royalties for oil or liquid or liquefiable hydrocarbons produced from the relevant lands on the same basis breaches the Leases/Assignments.

### MARKET VALUE FOR SALES OF GAS

4.35     The Leases/Assignments establish a method to calculate market value of gas produced from the relevant lands for the purpose of computing royalties. In all cases, these leases provide that, if actual sales of gas produced from the relevant lands meet certain criteria, those actual sales will set the market value (for the purpose of computing royalties).

4.36     If the actual sales fail to meet the listed criteria, the Leases/Assignments set the market value (for the purpose of computing royalties) of gas produced from the relevant lands by calculating "the arithmetical average of the two highest prices then being paid by purchasers in [Tarrant and Johnson Counties], State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises." Where the arithmetical average method of calculating market value applies to the sale of gas produced from the relevant lands, the Leases/Assignments provide that, to the extent "prices used in determining market value . . . are under contracts or arrangements making deduction for any of the expenses of production gathering, dehydration, compressing, transporting, manufacturing, processing, treating or marketing of such oil, liquid or liquefiable hydrocarbons or gas, then such deduction shall be added back into the prices for the purposes of calculating market value for the payment of royalties to the end that Lessor's royalty shall not be charged directly or indirectly with any such expenses, except as expressly provided in this Lease."

4.37     On information and belief, none of Chesapeake Exploration's actual sales of gas produced from the relevant lands meet the criteria listed in the Leases/Assignments for deeming the sale price the market value (for the purpose of computing royalties).

a.     On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of gas produced from the relevant lands under a bona fide gas sales contract.

b. On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of gas produced from the relevant lands under a contract providing for the purchase of such gas by a purchaser which is not an affiliate (as defined in the Leases/Assignments) of Chesapeake Exploration.

c. On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of gas produced from the relevant lands under a contract where the only consideration for such sale is the price of the gas provided for in such contract (with no provision for advance payment).

d. On information and belief, Chesapeake Exploration has sold and now sells Chesapeake Exploration's share of gas produced from the relevant lands under a contract that has a   term of more than five years.

e. On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of gas produced from the relevant lands under a contract that contains provisions for upward redetermination of price not less often than annually on a basis to insure that the price for such gas will always be reasonably equivalent to, and not less than, then current market value of gas similarly sold or used in the area of the relevant lands.

4.38    Chesapeake has not paid the Plaintiffs' royalty interests payments and drill site overriding royalty interests payments for gas produced from the relevant lands covered by the Leases/Assignments using a market price calculated from "the arithmetical average of the two highest prices then being paid by purchasers in [Tarrant and Johnson Counties], State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises."

4.39    To the extent Chesapeake has paid the Plaintiffs' royalty interests payments and drill site overriding royalty interests payments for gas produced from the relevant lands covered by the Leases/Assignments using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance," Chesapeake has failed to adjust such prices to eliminate

deductions forbidden in the Leases/Assignments. Chesapeake's failure to pay the Plaintiffs' royalty interests payments and drill site overriding royalty interests payments for gas produced from the relevant lands as described above violates the Leases/Assignments.

### ACCESS TO INFORMATION

4.40    The Leases/Assignments provide the lessors "the right at all reasonable times personally or by representative, to inspect the books, accounts, contracts, records and data of Lessee pertaining to the development, production, treatment, storage, transportation, sale and marketing of oil, gas or any components thereof and associated minerals produced from the Leased Premises, on an annual basis." Further, The Leases/Assignments give the lessors audit rights over "Lessee's accounts, contracts, books and records pertaining to the Leased Premises for the purpose of ascertaining the amount of production and sales and the cost of manufacturing and extracting any and all substances covered by this agreement."

4.41    The Leases/Assignments provide Plaintiffs "full access" to the relevant records relating to all production from the relevant lands covered by the Leases/Assignments.

4.42    Despite repeated requests by Plaintiffs for, among other permitted materials, relevant contracts and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands, Chesapeake has refused to comply with its obligation to provide these materials to Plaintiffs. Chesapeake's refusal to provide the requested information not only breaches the Leases/Assignments but also suggests that Chesapeake recognizes that its arrangements (described more fully below) do not comport with its obligations under the Leases/Assignments.

### CHESAPEAKE'S ATTEMPTS TO AVOID PAYING PROPER ROYALTIES AND OVERRIDES

4.43    Chesapeake Energy Corporation is the parent company of, and holds the

controlling interest in, Chesapeake Energy Marketing, Inc. (CEMI), Chesapeake Midstream

Partners, n/k/a Access Midstream Partners (CMP)[1], Chesapeake Exploration, and Chesapeake

Operating.

4.44    On information and belief, Chesapeake does business with two Chesapeake

family affiliates, CEMI and CMP, in connection with the above-described leases.   CEMI

purchases natural gas—including, on information and belief, natural gas produced from the

relevant lands—at the wellhead from Chesapeake and sells it to third parties downstream.

4.45    CMP provides gas-gathering services—including, on information and belief,

such services in connection with production from the relevant lands—for Chesapeake.

4.46    Chesapeake uses its contracts with its affiliates, CEMI and CMP, to suppress

the prices on which it pays royalties and overrides to Plaintiffs.

4.47    In its transactions with CEMI, Chesapeake imbeds into the sales price received

by Chesapeake at the wellhead the same costs (i.e., "expenses of production, gathering,

dehydration, compression, transportation, manufacturing, processing, treating, or marketing")

that the Leases/Assignments forbid Chesapeake from deducting against royalty and override

payments.

4.48    CEMI pays Chesapeake the amount CEMI obtains in downstream sales less the

costs incurred to bring the gas to market. And Chesapeake pays royalties and overrides to

plaintiffs based on the price obtained in the CEMI/Chesapeake transaction.

4.49    Chesapeake's payment of royalties and overrides on the basis of this artificial

market value measurement breaches the Leases/Assignments.

4.50    For example, among other criteria, the Leases/Assignments require that gas

---

[1] In June 2012, Chesapeake Energy announced it would sell its midstream assets, which include its holdings in CMP and some gathering and processing assets of CMP.

must be sold "under a bona fide gas sales contract providing for the purchase of such gas by a purchaser which is not an affiliate of [Chesapeake Exploration]" in order for the particular sale of gas to set the particular market value (for the purpose of computing royalties). Similarly, the Leases/Assignments require that oil or liquid or liquefiable hydrocarbons must be sold "to a purchaser that is not an affiliate of [Chesapeake Exploration] at a price arrived at by arms-length dealing between [Chesapeake Exploration] and such purchaser" in order for the actual sale of oil or liquid or liquefiable hydrocarbons to set the market value (for the purpose of computing royalties).

4.51    As the CEMI/Chesapeake gas sale transactions do not meet the criteria set out in the Leases/Assignments, Chesapeake should have paid royalties on gas produced from the relevant lands by calculating "the arithmetical average of the two highest prices then being paid by purchasers in [Tarrant and Johnson Counties], State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises." Similarly, because the oil of liquid or liquefiable hydrocarbon sales do not meet the certain criteria set out in the Leases/Assignments Chesapeake should have paid royalties on oil or liquid or liquefiable hydrocarbons produced from the relevant lands by calculating "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance."

## NATURAL GAS LIQUIDS AND GAS VOLUMES

4.52    On information and belief, Chesapeake employs CMP to perform gas-gathering and related midstream services for the production on the relevant land.

4.53    On information and belief, Chesapeake imposes the costs of such services on

the price paid to Plaintiffs s under the Leases/Assignments.

4.54    The imposition of such charges on royalties and overrides paid to Plaintiffs breaches the Leases/Assignments.

4.55    On information and belief, production from the lands covered by the Leases/Assignments contains natural gas liquids, yet Chesapeake has failed to pay royalties and overrides on natural gas liquids associated with production from the relevant lands. Chesapeake may use its affiliates and their contracts in order not to pay or underpay royalties and overrides on natural gas liquids associated with production from the relevant lands. By whichever means, Chesapeake has failed to pay royalties and overrides to Plaintiffs on most or all such liquids.

4.56    On information and belief, Chesapeake has failed to account for and pay royalties and overrides on all gas volumes and associated natural gas liquids associated with production from the relevant lands. Chesapeake's volume deficiencies may result from inaccurate internal accounting or from affiliated transactions with CEMI and/or CMP (or other affiliates). By whichever means, Chesapeake has failed to account for and pay royalties and overrides on all such volumes. Chesapeake cannot avoid its natural gas liquid payment obligations, whether by sham transactions with its affiliates CEMI and CMP or by other means. And it cannot avoid its obligations to pay on all volumes, whether by internally failing to monitor or account for all gas and natural gas liquid productions and sales, by sham transactions with its affiliates CEMI and CMP, or by other means.

PROPER PARTY

4.57    The Leases/Assignments provide that Chesapeake's rights "may not be assigned in whole or in part without the prior written consent of Lessor, which may be unreasonably

withheld." The Leases/Assignments further provide that any "assignment . . . made without the written consent of Lessor first had and obtained shall be void." The Assignments provide Plaintiffs the same ability to prevent subsequent assignments of the assignee's rights.

4.58    The Plaintiffs have never consented to any assignment of the Leases/Assignments to entities other than Chesapeake.

4.59    The Plaintiffs have contractual relationships under the Leases/Assignments only with Chesapeake.

4.60    On information and belief, Chesapeake as lessee and operator conducts all royalty and override payment and royalty and override administration for the Leases/Assignments.

4.61    On information and belief, Chesapeake has rights of reimbursement from any other parties potentially involved in the Leases/Assignments.

*"Chesapeake executed an adroit escape, raising nearly $5 billion . . . [b]y gouging many rural landowners out of royalty payments they were supposed to receive" — ProPublica*

4.62    Plaintiffs bring this action against Defendants Access Midstream Partners, L.P. ("Access Midstream") and Chesapeake Energy Corporation ("Chesapeake") (collectively referred to herein as "Defendants") and Chesapeake Midstream Development, L.L.C. ("Chesapeake Midstream").

4.63    Since at least 2010 Chesapeake engaged in unlawful conduct to improperly extract billions of dollars in royalties owed to Plaintiffs and other lessors by artificially manipulating and deducting from royalty payments the cost of "marketing," "gathering," and "transporting" natural gas.

4.64    The marketing, gathering, and transportation deductions at issue in this Action

were both unreasonable and inflated by Defendants.

4.65     As outlined in a March 13, 2014 article published by ProPublica entitled Chesapeake     Energy's     $5     Billion     Shuffle,     available     at http://www.propublica.org/article/chesapeake-energys-5-billion-shuffle, (last visited June 20, 2014) (the "ProPublica Report").

4.66     Chesapeake conspired with Access Midstream to continue its scheme to extract inflated royalty deductions from lessors.[2] According to the ProPublica Report, Chesapeake artificially inflated deductions charged to lessors in order to, inter alia, satisfy an off-balance sheet loan from Access Midstream that was disguised as asset sales. The purpose of the off-balance sheet loan was to hide Chesapeake's need to "raise billions of dollars quickly" without alerting the market to its financial troubles when it was already saddled with billions of dollars in debt. See id.

4.67     Access Midstream, Chesapeake's co-conspirator, was more than eager to participate in the scheme. In return for "purchasing" $4.76 billion in gas transportation lines from Chesapeake, Access Midstream was guaranteed to recover $5 billion plus a 15% return on its pipelines over the next decade—all of which would be shouldered by inflated expenses charged to the class. See id.

4.68     The deals were highly favorable to Access Midstream. According to J. Michael Stice, Access Midstream's Chief Executive Officer, "[i]t doesn't get any better than this." See id. For lessors, however, the Chesapeake-Access Midstream deals could not get any worse.

---

[2] *ProPublica* is a highly respected non-profit organization that produces investigative journalism. ProPublica has been awarded two Pulitzer Prizes and a Peabody Award (the highest honor in broadcast journalism) in 2013. See http://www.propublica.org/awards/, last accessed June 20, 2014. Moreover, *ProPublica's* investigations have been cited by federal courts when evaluating the sufficiency of plaintiffs' pleadings. *See e.g., Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.,* 2011 WL 1335803, at *27 (M.D. Tenn. Mar. 31, 2011) (noting allegations based on *ProPublica's* investigation).

4.69   The Chesapeake-Access Midstream deals were not the only mechanism used by Chesapeake to fleece lessors out of royalty payments and, as evidenced by the following statements, the full scope of Defendants' scheme has not been fully revealed.

AVOIDANCE OF STATUTES OF LIMITATIONS

4.70   Defendants' statute of limitations defenses regarding Plaintiffs' claims are precluded under the doctrines of quasi-estoppel, fraudulent concealment and/or the discovery rule.

**The doctrine of quasi-estoppel precludes Defendants' statutes of limitations defenses.**

4.71   Quasi-estoppel precludes the Defendants in this case from asserting rights inconsistent with a position previously taken. *See e.g., Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000); *Cadillac Bar W. End Real Estate v. Landry's Restaurants, Inc.*, 399 S.W.3d 703, 706 (Tex. App. — Dallas 2013, pet. denied); *Eckland Consultants, Inc. v. Ryder, Stilwell, Inc.*, 176 S.W.3d 80, 87 (Tex. App. — Houston [1st Dist.] 2004, no pet.). Unlike the more common equitable estoppel, quasi-estoppel does not require proof that the statements made by Defendants were false or that the party asserting the quasi-estoppel claim detrimentally relied on the representation. *Eckland Consultants*, 176 S.W.3d at 87; *New Braunfels Factory Outlet Ctr., Inc. v. IHOP Realty Corp.*, 872 S.W.2d 303, 307 (Tex. App. — Austin 1994, no writ).

4.72   The doctrine of quasi-estoppel precludes Defendants from asserting a statute of singularly and collectively, the Leases/Assignments defense.

**Defendants' fraudulent concealment precludes Defendants' statutes of limitations defenses.**

4.73   Defendants are also precluded from asserting the defense of statute of singularly and collectively, the Leases/Assignments because the same acts which support a claim of

quasi-estoppel also support a claim of fraudulent concealment, which tolls singularly and collectively, the Leases/Assignments on all of the Plaintiffs' claims.

4.74    Fraudulent concealment of a claim is treated as a form of equitable estoppel, *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex.1983), one precluding the assertion of the singularly and collectively, the Leases/Assignments bar when the reason singularly and collectively, the Leases/Assignments ran is because of the defendant's failure to disclose the truth. *West v. Hamilton*, 2008 WL 4527434 at * 3 n. 2 (Tex. App. — Amarillo Oct. 9, 2008, no pet.) (mem. op.); *Wright v. Greenberg*, 2 S.W.3d 666, 675 (Tex. App. — Houston [14th Dist.] 1999, pet. denied). Fraudulent concealment exists when a defendant has a duty to make a disclosure which would inform the plaintiff of the existence of a claim, but instead of making the required disclosure conceals the existence of the claim. *Trousdale v. Henry*, 261 S.W.3d 221, 235 (Tex. App. — Houston [14th Dist.] 2008, pet. denied); *Casey v. Methodist Hosp.*, 907 S.W.2d 898, 903 (Tex. App. — Houston [1st Dist.] 1995, no writ). Unlike tolling of singularly and collectively, the Leases/Assignments under the discovery rule, tolling based on fraudulent concealment does not require proving that the injury is inherently undiscoverable. *LaGloria Oil & Gas Co. v. Carboline Co.*, 84 S.W.3d 228, 239 (Tex. App. — Tyler 2001, pet. denied) (citing S.V. v. R.V., 933 S.W.2d 1, (Tex. 1996)); *Rodessa Resources, Inc. v. Arcadia Exploration & Production Co.*, 5 S.W.3d 363, 366 (Tex. App. — Texarkana 1999, no pet.).

4.75    Here, Defendants by fraud induced plaintiffs to delay filing claims beyond the applicable statute of singularly and collectively, the Leases/Assignments and fraudulently concealed Plaintiffs' claims in a way that tolled singularly and collectively, the Leases/Assignments.

**The Discovery Rule precludes Defendants' statutes of limitations defenses.**

4.76    The Defendants' fraudulent concealment from the Plaintiffs and the Discovery Rule tolled the statute of limitations in this case and the Defendants are estopped from asserting singularly and collectively, the Leases/Assignments as a defense because by words and conduct defendants induced plaintiffs to delay filing claims beyond the applicable statute of singularly and collectively, the Leases/Assignments.

## V. CONDITIONS PRECEDENT

5.01    All conditions precedent to plaintiffs' claim for relief either have been performed or have occurred.

## VI. CAUSES OF ACTION

### COUNT 1—BREACH OF CONTRACT (EXPRESS AND/OR IMPLIED COVENANTS)

6.01       Plaintiffs incorporate by reference all preceding paragraphs.

6.02    Singularly and collectively, the Leases/Assignments are valid, enforceable contracts between Plaintiffs and Defendants.

6.03 Plaintiffs are the proper parties to sue to enforce the terms of the Leases/Assignments. Plaintiffs have performed, or have substantially performed, any and all necessary conditions precedent, dependent obligations, and/or dependent covenants owed the Leases/Assignments. Plaintiffs are, and have been, entitled to Chesapeake's performance of its obligations under the Leases/Assignments.

6.04 Chesapeake has materially breached its contractual obligations to plaintiffs, including the express terms set out above and/or the implied covenant to market the plaintiffs' minerals in good faith. Examples of such breaches include Chesapeake unilaterally:

a.   deducting certain production and post-production expenses from the royalties to which the Plaintiffs are and have been entitled;

b.   paying the Plaintiffs payments that reflect, either directly or indirectly, "any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals;"

c.   imposing, directly or indirectly, on the Plaintiffs more than $0.75 per Mcf in costs of treating, dehydrating, compressing, processing, and transporting;

d.   paying the Plaintiffs less than the lessor's full royalty share of any natural gas liquid or residue gas produced from the relevant lands;

e.   imposing on the Plaintiffs the costs of processing/separation processes used on the production from the respective lands;

f.   imposing, directly or indirectly, on Plaintiffs' overriding royalty payments charges for "exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances;"

g.   failing to pay the Plaintiffs royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance;"

h.   to the extent Chesapeake has paid the Plaintiffs royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance," failing to adjust such prices to eliminate deductions forbidden the Leases/Assignments.

i.   failing to pay the Plaintiffs' overriding royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands on the same basis;

j.   failing to pay the Plaintiffs' overriding royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid by purchasers in [Tarrant and Johnson Counties], State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises;"

k.   To the extent Chesapeake has paid the Plaintiffs' overriding royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by

purchasers regularly engaged in the purchase of such substance," failing to adjust such prices to eliminate deductions forbidden in the relevant leases.

l.  Failing to pay the Plaintiffs' overriding royalty payments for gas produced from the relevant lands on the same basis;

m.  Refusing to provide the Plaintiffs, among other materials, relevant contracts and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands;

n.  Paying royalties and overrides to Plaintiffs based on the price obtained in the CEMI/Chesapeake transaction rather than as provided under the Leases/Assignments;

o.  Imposing on the Plaintiffs the costs of services from CMP; and

p.  Failing to pay royalties and overrides on most or all of the natural gas liquids associated with production from the relevant lands covered by the Leases/Assignments.

6.05  Defendants' breaches of contractual obligations under the Leases/Assignments have caused financial injuries to the Plaintiffs and/or benefits to Chesapeake, for which the Plaintiffs now seek all expectation-interest damages, consequential and incidental damages, lost profits, out-of-pocket losses, and future damages.

## COUNT 2: BREACH OF THE IMPLIED DUTY TO MARKET TO OBTAIN BEST CURRENT PRICE

6.06  The Leases/Assignments are known in the oil and gas industry as "proceeds" in character.

6.07  Under Texas law, CELLC as the lessee in a "proceeds" lease has an implied duty to market the Plaintiffs' gas as a reasonably prudent operator would under the same or similar circumstances in order to obtain the best current price reasonably attainable (hereinafter "the Implied Duty to Market to Obtain Best Current Price").

6.08 The Implied Duty to Market to Obtain Best Current Price exists, among other things, to protect lessors from a lessee's self-dealing as the Chesapeake Defendants have engaged in with respect to the Leases/Assignments.

6.09 Plaintiffs would show that a reasonably prudent operator would have taken Plaintiffs' gas to a competitive market to obtain the highest and best price reasonably attainable.

6.10 In violation of the Implied Duty to Market to Obtain Best Current Price, CELLC wholly failed to take plaintiff's gas to a competitive market.

6.11 CELLC violated the Implied Duty to Market to Obtain Best Current Price because it simply sold Plaintiffs' gas at the wellhead to CEMI, its affiliated, wholly-owned subsidiary, and calculated Plaintiffs' royalties on the "net-back" price paid by CEMI for the unprocessed gas.

6.12 Plaintiffs would show that there is no "market" for Plaintiffs' gas at the wellhead. The market that does exist can only be accessed after the gas is processed (i.e., contaminants removed, gas dehydrated and compressed).

6.13 Plaintiffs sustained damage as a result of CELLC's breach of the Implied Duty to Market to Obtain Best Current Price because had CELLC actually processed Plaintiffs' gas and taken it to market, CELLC could have obtained a higher and better price than it received from CEMI, and under the terms of Plaintiffs' The Leases/Assignments, which prohibited deduction of post-production processing costs, Plaintiffs would have received higher royalty payments.

## COUNT 3: BREACH OF MINERAL LEASE AGREEMENT

6.14   As alleged above, CELLC is required by the Leases/Assignments to pay Plaintiffs a royalty calculated on the price received at the point of sale, free and clear of post-production costs.

6.15   By selling Plaintiffs' gas to CEMI at the wellhead, CELLC has breached  its agreements in the form of the Leases/Assignments with Plaintiffs, resulting in the damages requested herein.

### COUNT 4: ACCOUNTING

6.16   Plaintiffs incorporate by reference all preceding paragraphs.

6.17   The Leases/Assignments impose on Chesapeake the duty to account to the Plaintiffs with respect to royalty and override payments.

6.18   In the alternative, damages alone will not compensate plaintiffs for their collective loss of royalty and override payments consistent with the lease; the facts and accounts presented are so complex that adequate relief may not be obtained at law; standard discovery procedures, such as requests for production, interrogatories, and subpoena duces tecum, may prove inadequate to provide plaintiffs with the information sought regarding royalty and override payments; and, under the Leases/Assignments, plaintiffs and Chesapeake have a contractual or fiduciary relationship with respect to royalty and override payments.

6.19   Plaintiffs have strictly complied with the terms of the lease and/or have not committed a material breach thereof. Further, the Plaintiffs come to the Court with clean hands.

6.20   Plaintiffs, therefore, seek an accounting, whether under the Leases/Assignments or, in the alternative, in equity, as follows:

    a.    For past and present royalties on adequate market value, volumes, and substances, at appropriate prices, and without inappropriate deductions for certain production costs and post-production costs;

b.  For future periodic accountings of Chesapeake's production and sales of natural gas and of liquids; and

c.  For future royalties determined by adequate market value, volumes, and substances, at appropriate prices, and without inappropriate deductions for certain production costs and post-production costs.

## COUNT 5: CONVERSION

6.21    Plaintiffs incorporate by reference all preceding paragraphs.

6.22    Defendants are liable to the Plaintiffs as a result of Defendants' conversion of production and production proceeds from Plaintiffs due to Plaintiffs under the Leases/Assignments.

6.23    Defendants withheld specifically identifiable sums of money from Plaintiffs and the without color of legal title or claim.

6.24    The Defendants did knowingly acquired or maintained an interest in, or received or possessed or transferred funds which were the proceeds of criminal activity, namely fraud and theft of funds over $100,000 derived from overcharging the Plaintiffs and thousands of others for postproduction expenses to make billions of dollars by hedging gas on the market while not paying the Plaintiffs' gas royalties due and payable to Plaintiffs, the direct and proximate result of which caused a benefit to Defendants and caused Plaintiff to suffer special and compensatory damages to be proven at trial.

6.25    Defendants did, knowingly exercise control over property to wit: the Plaintiffs and thousands of others' gas royalties payments in US Dollars with the intent to permanently deprive the owners (Plaintiffs) of their gas royalty payments in US Dollars, affecting property and/or the pecuniary interest of Plaintiffs, the direct and proximate result of which caused a benefit to Defendants and caused Plaintiffs to suffer special and compensatory damages to be proven at trial..

6.26   Defendants' conversion from the Plaintiffs is conduct described as a felony under TEX. CIV. PRAC. REM. CODE §41.008(c) (13)[3] and § 31.03 *et seq.* TEX. PENAL CODE (Felony Amount/Level Theft).

6.27   Plaintiffs were the rightful owner of these specifically identifiable sums of money. Defendants extracted minerals and wrongfully exercised dominion and control over these minerals (and the proceeds thereof), or, in the alternative, acquired possession wrongfully, proximately causing Plaintiffs' injury and damages within the jurisdictional limits of this Court.

**COUNT 6:   DECLARATION AND INJUNCTION TO PAY ALL FUTURE PROCEEDS &DECLARATION OF TERMINATION AND EXTINGUISHMENT OF LEASE**

6.28   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

6.29   Plaintiffs seek a declaration and accounting from this Court as to the minerals and royalties taken by Defendants under the Leases/Assignments.

6.30   Plaintiffs seek a declaration from this Court that all future proceeds from Plaintiffs' mineral estate be fully payable to Plaintiffs as the sole and rightful owners of such proceeds because Chesapeake has acted contrary to its obligations under the Leases/Assignments.

---

[3] TEX. CIV. PRAC. REM. CODE §41.008(c)  This section does not apply to a cause of action against a defendant from whom a plaintiff seeks recovery of exemplary damages based on conduct described as a felony in the following sections of the Penal Code if, except for Sections 49.07 and 49.08, the conduct was committed knowingly or intentionally:
     (13) Chapter 31 (theft) the punishment level for which is a felony of the third degree or higher...."

6.31   A substantial controversy of sufficient immediacy and reality exists between the Plaintiffs and Chesapeake so as to warrant this Court's declaration on the matters presented. Plaintiffs and Chesapeake hold adverse legal interests.

6.32   Plaintiffs seek a declaration as to the following rights and legal relations:

a.      that Chesapeake cannot deduct certain production and post-production expenses from the royalties and overrides to which the Plaintiffs are and have been entitled;

b.      that Chesapeake cannot pay the Plaintiffs payments that reflect, either directly or indirectly, "any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals;"

c.      that, to the extent Chesapeake can impose any costs on the Plaintiffs' overriding royalty payments, Chesapeake cannot impose, directly or indirectly, on the Plaintiffs any more than $0.75 per Mcf in costs of treating, dehydrating, compressing, processing, and transporting;

d.      that Chesapeake cannot pay the Plaintiffs than the lessor's full royalty share of any natural gas liquid or residue gas produced from the relevant lands; that Chesapeake cannot impose on the Plaintiffs the costs of processing/separation processes used on the production from the respective lands; that Chesapeake cannot impose, directly or indirectly, on Plaintiffs' overriding royalty payments charges for "exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances;"

e.      that Chesapeake must pay the Plaintiffs' overriding royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance;"

f.      that, when Chesapeake pays the Plaintiffs' overriding royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in [Tarrant and Johnson Counties], State of Texas by purchasers regularly engaged in the purchase of such substance," Chesapeake must adjust such prices to eliminate deductions forbidden in the Leases/Assignments;

g.   that Chesapeake must pay the Plaintiffs Oil & Gas overrides for oil or liquid or liquefiable hydrocarbons produced from the relevant lands on the same basis; that Chesapeake must pay the Plaintiffs' royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid by purchasers in [Tarrant and Johnson Counties], State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises;"

h.   that, when Chesapeake pays the Plaintiffs' overriding royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance;"

i.   that Chesapeake must adjust such prices to eliminate deductions forbidden in the the Leases/Assignments;

j.   that Chesapeake must pay The Plaintiffs Oil & Gas overrides for gas produced from the relevant lands on the same basis;

k.   that Chesapeake must provide plaintiffs, among other materials, relevant contracts and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands;

l.   that Chesapeake cannot pay royalties and overrides to plaintiffs based on the price obtained in the CEMI/Chesapeake transaction rather than as provided under the Leases and/or Assignments;

m.   that Chesapeake cannot impose on the Plaintiffs the costs of services from CMP; and

n.   that Chesapeake must pay royalties and overrides on all of the natural gas liquids associated with production from the relevant lands covered by the Leases/Assignments.

## COUNT 7: MONEY HAD AND RECEIVED

6.33   Plaintiffs incorporate by reference all preceding paragraphs.

6.34   Plaintiff pleads that Defendants hold unpaid royalties which constitute specifically identifiable sums of money that in equity and good conscious belong to Plaintiff.

6.35   Defendants have been and will continue to be unjustly enriched if allowed to keep the unpaid royalties.

6.36  In committing the acts and omissions set out herein, Defendants, while having vastly superior mortgage knowledge relative to Plaintiffs, unjustly enriched themselves at the expense of Plaintiffs through inequitable conduct in furtherance of the conspiracy by Defendants' overt acts described herein as a felony under § 31.03 *et seq.* TEX. PENAL CODE (Felony Amount/Level Theft).

6.37  Plaintiffs hereby notify Defendants that Plaintiffs are hereby claiming a constructive trust on all of Defendants' assets.

6.38  Plaintiffs would show that Defendants hold, in an attempt to avoid legal accountability, money or its equivalent in property that in equity and good conscience belongs to Plaintiffs.

6.39  Defendants obtained money or its equivalent in property that in equity and good conscience belongs to Plaintiff by capitalizing on the fact that they were not *in pari delicto potior est conditio* with Plaintiffs.

6.40  Using their special knowledge to defeat the intent of the parties in fraud of Plaintiffs and to take undue advantage of Plaintiffs, Defendants have unjustly enriched themselves by obtaining money or its equivalent in property that in equity and good conscience belongs to Plaintiffs.  In such instances the law implies a promise to return the property, the money by forfeiture and disgorgement of profits.

6.41  Because of the overt acts of Defendants in furtherance of the conspiracy described herein as a felony under § 31.03 *et seq.* TEX. PENAL CODE (Felony Amount/Level Theft), Plaintiffs requests the Court impose a constructive trust on, and impose an equitable lien against the assets, and foreclose the equitable lien and order turnover and disgorgement of the assets of Defendants to Plaintiffs.

6.42   Plaintiffs have been damaged within the jurisdictional limits of this Court.

### COUNT 8: VIOLATIONS OF THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. §§ 1961-1968

6.43   Plaintiffs bring this lawsuit pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 to recover the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs sustained as a result of Defendants' illegal conduct.

6.44   The transport and processing steps which follow removal of natural gas from the wellhead, but precede entry of the gas into an interstate transmission pipeline, are sometimes referred to as "gathering."

6.45   As illustrated in Access Midstream's 2013 Annual Report filed with the Securities and Exchange Commission ("SEC") on Form 10-K on February 21, 2014, Access Midstream operates between the lessors (at the wellhead) and the interstate pipeline system:



6.46   While Federal rules limit fees that can be charged on the interstate pipelines to prevent gouging, drilling companies levy fees on local pipelines, known as gathering lines.3 However, even where such fees are deducted, they must be reasonable and actual.

6.47   Processing can also include certain services to make gas suitable for entry into the interstate pipeline system, such as dehydration when the natural gas has a high water

---

content. As Access Midstream concedes, however, "[i]n general, the natural gas in the northern Marcellus Shale is lean and typically requires little to no treatment to remove contaminants."[4]

## B. Chesapeake Turns to Access Midstream to Avoid Financial Collapse

6.48   Despite their dominant role in natural gas extraction in the United States, Chesapeake was experiencing severe financial difficulty, including funding gaps, reportedly due to major capital expenditures and lower natural gas prices and cash flow. As a result, Chesapeake needed cash quickly to service its outstanding debt and fund its operations.[5]

6.49   On August 3, 2010, Chesapeake formed Access Midstream and began spinning off its midstream assets, which included its natural gas gathering and intrastate pipeline operations, through a series of sales to Access Midstream in order to fund its ongoing operations. During this time, Chesapeake was using its subsidiaries to artificially inflate deductions charged to lessors.

6.50   In December 2011, Chesapeake completed the sale of Appalachia Midstream Services, L.L.C. ("AMS"), a wholly owned subsidiary of Chesapeake Midstream, and AMS's Marcellus Shale midstream assets for $865 million in total consideration.[6]

6.51   Still needing "to fund the company's anticipated capital expenditures during 2012 and provide additional liquidity for 2013," Chesapeake announced in February 2012 its intent to sell additional midstream assets.[7]

On December 20, 2012, Chesapeake completed the sale of its subsidiary Chesapeake

---

[4] Access Midstream Partners, L.P., Form 10-K, filed February 21, 2014.
[5] See, e.g., Christopher Helman, Chesapeake Energy's New Plan: Desperate Measures for Desperate Times, FORBES, Feb. 13, 2012 (the "Forbes Report").
[6] Access Midstream Partners, L.P., Form 8-K, filed Jan. 4, 2012.
[7] Chesapeake Energy Corporation, Chesapeake Energy Corporation Provides Details on its Financial Plan for 2012, BUSINESS WIRE, Feb. 13, 2012.

Midstream Operating, L.L.C. ("CMO") to Access Midstream, including CMO's Marcellus Shale midstream assets, for $2.16 billion in total consideration.[8]

When Chesapeake sought to spinoff its gathering operations, it turned to J. Michael Stice—the President and Chief Operating Officer of Chesapeake Midstream and Senior Vice President of Natural Gas Projects for Chesapeake from November 2008 through December 2012—to run the operation. Stice then became the Chief Executive Officer of Access Midstream following its acquisition of the CMO midstream assets.

Domenic J. Dell'Osso, Jr.—as the Executive Vice President and Chief Financial Officer of Chesapeake since November 2010 and Chief Financial Officer of Chesapeake Midstream from August 2008 to November 2010—was also intimately familiar with the scheme.

Stice and Dell'Osso have served as directors of Access Midstream's general partner, Access Midstream Partners GP, L.L.C., since July 2012 and July 2011, respectively.

According to the ProPublica Report, post-spinoff agreements between Chesapeake and Access Midstream guarantee that Chesapeake and certain of its subsidiaries and affiliates get a rebate of some of the monies they will pay out to Access Midstream in the form of payments for services and additional assets.[9]

Among other specific items, Access Midstream received a guarantee from Chesapeake that personnel and employees would be made available to it during a transitional period and that certain services would be provided to Access Midstream that would be paid going forward.[10] Notably, Access Midstream is managed and directed by former and current Chesapeake officers, has made extensive use of other Chesapeake employees in conducting its operations, and

---

[8] Access Midstream Partners, L.P., Form 8-K, filed Dec. 26, 2012.
[9] See ProPublica Report.
[10] Access Midstream Partners, L.P., Form 10-K, filed Feb. 25, 2013; see also Access Midstream Partners, L.P., Form 8-K, Exhibit 10.2, filed Dec. 19, 2012; Access Midstream Partners, L.P., Form 8-K, Exhibit 10.2, filed June 20,

continues to pay Chesapeake and other affiliates and subsidiaries for a variety of services.

In connection with Access Midstream's acquisition of Chesapeake Midstream's operating assets, Access Midstream replaced Chesapeake Midstream as the beneficiary of certain contractual obligations and entered into gas gathering agreements with several Chesapeake subsidiaries (the "Gathering Agreements").[11]

Pursuant to the Gathering Agreements, Chesapeake's subsidiaries agreed to pay Access Midstream for natural gas gathering and transportation services, including intrastate transport.[12]

For example, under the Gathering Agreement covering CMO's former Marcellus Shale assets (the "Marcellus Gathering Agreement"), Chesapeake Appalachia's payments to Access Midstream for gas gathering and transportation services are referred to as the "Marcellus fee" and described as "a cost-of-service based fee."[13]

However, this characterization is misleading and false. As the ProPublica Report details, the fee is not "cost-of-service" based but was instead intended to provide Access Midstream with a guaranteed, above-market return as an incentive and consideration for the payments it made to Chesapeake.

As explained by ProPublica, "[a]n executive at a rival company who reviewed the deal at ProPublica's request said it looked like Chesapeake had found a way to make the landowners pay the principal and interest on what amounts to a multibillion loan to the company from Access Midstream."[14]

In fact, the Marcellus Gathering Agreement has a 15-year term and provides that, on January 1 of each year, the Marcellus fee will be recalculated to provide "a specified pre-income

---

2012.
[11] See, e.g., Access Midstream Partners, L.P., Form 8-K, filed Dec. 26, 2012.
[12] Id.
[13] Id.

tax rate of return on invested capital."[15] In other words, it was structured to insure a guaranteed rate of return to Access Midstream for a 15-year period.[16]

ProPublica has reported that the rate of return is 15% per year: "Chesapeake pledged to pay Access enough in fees to repay the $5 billion plus a 15 percent return on its pipelines."[17]

Chesapeake's ability to follow through on its promise to lock in Access Midstream's rate of return relies on continued inflation of gathering costs and other services paid to Access Midstream and deducted from oil and gas lessors' royalty payments.

Fully aware of the true market rates of such services, Chesapeake and its subsidiaries agreed to this above-market rate of return and then Chesapeake agreed to pay Access Midstream supra-competitive prices for natural gas gathering and transportation services, as part of the renewed agreement with Access Midstream and to repay the off-balance sheet loan provided by Access Midstream to Chesapeake.

Chesapeake's subsidiaries, such as Chesapeake Appalachia, have, in turn, passed the costs of the services along to Pennsylvania oil and gas lessors, such as Plaintiffs, by deducting the inflated expenses built into the Marcellus fee from lessors' royalty payments.

The ProPublica Report details how Chesapeake subsidiaries have deducted amounts far in excess of their payments to Access Midstream for gas gathering and transportation services. Chesapeake's subsidiaries have paid fees, which are then charged to lessors, for gas pipeline transport to Access Midstream that are many multiples of Access Midstream's actual costs. In one example, ProPublica reported[18] that the markup was in excess of 3,000%:

---

[14] See ProPublica Report.
[15] Id.
[16] See Forbes Report.
[17] See ProPublica Report.
[18] Id.

# The Great Chesapeake Markup

**9¢**



**What it Cost**

It cost Access Midstream 9 cents per 1,000 cubic feet (Mcf) to move gas through the pipelines connected to Joe Drake's farm.

**85¢**



**What Chesapeake Paid**

Chesapeake paid Access 85 cents per Mcf to move gas through Access's national pipeline network (on average).

**$2.94**

**What They Charged Drake**

Chesapeake then charged Joe Drake $2.94 per Mcf — more than 30 times the actual cost and three times what they paid Access on average — to transfer Drake's gas through the pipeline.

*Source: *ProPublica* Report*

47. As one of Chesapeake's competitors stated, "[t]hey were trying to figure out a way to raise money and keep their company alive [and] they looked at it as a way to get disguised financing … that is going to be repaid at a premium."[19]

These wrongful royalty deductions are detailed in Plaintiffs' royalty statements, further described herein and attached hereto as Exhibit D. Plaintiffs relied on and assumed that the deductions in the royalty statements were reasonable.

These deductions were inflated, improper, completely unrelated to the "cost of services," did not serve to enhance the marketability of gas, and instead, merely served to enrich the co-conspirators who devised the scheme.

The benefit to Access Midstream is clear. Access Midstream's predominant source of revenue is gathering fees and Chesapeake accounts for approximately 84% of Access Midstream's business.[20]

Due in part to Stice's positive statements and other disclosures about the nature of Access Midstream's guaranteed revenues, the broader market is also beginning to understand the boon to Access Midstream. As of June 16, 2014, Access Midstream's common stock (NYSE: ACMP)

---

[19] Id.

was trading at $66.57 per share, more than double the $32.41 per share it traded at on December 14, 2012, the week before the acquisition of Chesapeake Midstream's assets was completed.

**C. Lessors are Charged Inflated and Unreasonable Royalty Deductions**

In order to facilitate Chesapeake's drilling and fracking operations in the Marcellus Shale formation, Chesapeake's subsidiaries, such as Chesapeake Appalachia, enter into agreements to lease land from Pennsylvania residents. In some cases, Chesapeake's subsidiaries purchase rights to existing leases to which it becomes a party as lessee. These lease agreements, such as those originally entered into by the Plaintiffs, give Chesapeake's subsidiaries the right to extract oil and natural gas from lessors' lands and to transport and sell the oil and gas.[21]

In return for the right to extract oil and gas, the lease agreements promise a royalty to the lessors based on the price ultimately realized by Chesapeake's subsidiaries for the oil and gas. Pursuant to Pennsylvania's Guaranteed Minimum Royalty Act ("GMRA"), that amount is the minimum permissible by law and requires leaseholders to receive at least 12.5%, or one eighth, of the sales price of the gas extracted from their land. See 58 P.S. § 33.3.

The Primary Lease states:

"LESSEE shall pay the LESSOR on oil and liquid hydrocarbons produced and saved from the premises ... the market value at the well of one eighth (1/8) of the oil and liquid hydrocarbons so used or sold. In no event shall the gas royalty payable hereunder be computed on the basis of a price the collection of which by LESSEE is unlawful or prohibited by order or regulation of any governmental authority having jurisdiction, and market value at the well shall not exceed the amount realized by LESSEE for such production computed at the well ... LESSEE may pay all taxes and fees levied upon LESSOR's royalty share of production of oil and gas, and deduct the amount so paid

---

[20] See ProPublica Report.

[21] Plaintiffs entered into an oil and gas lease with Anadarko E&P Company LP ("Anadarko") on or about May 11, 2006 covering 135.6 acres of their property (the "Primary Lease"). See Exhibit E. Subsequently, prior to May 28, 2010 Chesapeake Appalachia entered into an agreement with Anadarko to purchase a portion of the Suessenbachs' leasehold and thereby became bound by its terms. See Exhibit F (May 28, 2010 Ratification and Amendment of Oil and Gas Lease, stating that "the Lease is now owned by Anadarko ... Chesapeake Appalachia ... and Statoil USA Onshore Properties Inc."). Separately, on or about December 19, 2008, the Suessenbachs entered into a Paid Up Oil & Gas Lease directly with Chesapeake Appalachia for a small 2-acre parcel of land not previously covered by the Primary Lease (the "2-Acre Lease"). See Exhibit G.

from any monies payable to LESSOR hereunder." See Exhibit E.

The 2-Acre Lease states:

"[Lessee agrees] [t]o pay Lessor an amount equal to one-eighth (1/8) of the revenue realized by Lessee for all gas and the constituents thereof produced and marketed from the Leasehold, less the cost to transport, treat and process the gas and any losses in volumes to point of measurement that determines the revenue realized by Lessee."
See Exhibit G.

The Primary Lease allows deductions for the "production of oil and gas" and the 2-Acre Lease identifies deductions for "the cost to transport, treat and process the gas," but nowhere does either lease permit deductions in excess of actual cost or which are unreasonable.

Contrary to Defendants' conduct, royalty deductions must be reasonable and, at the very least, must be proportionate to lessors' minimum guaranteed royalty under the GMRA (i.e., lessors' post-production deductions cannot exceed 12.5% of total post-production costs).

Notwithstanding these limitations, Defendants, under the guise of Chesapeake's subsidiaries' agreements with lessors, exploited deductions language from the lease agreements to, among other things, shift repayment of Chesapeake's off-balance sheet loan from Access Midstream to the lessors.

Improper royalty deductions taken from lessors are evident from Plaintiffs' royalty statements, attached as Exhibit D, relating to the Primary Lease, including the following:

- October 23, 2012 deduction of approximately 23% from the royalty payment;

- November 21, 2012 deduction of approximately 25% from the royalty payment;

- February 21, 2013 deduction of approximately 19% from the royalty payment;

- April 23, 2013 deduction of approximately 21% from the royalty payment;

- May 23, 2013 deduction of approximately 19% from the royalty payment;

- October 23, 2013 deduction of approximately 24% from the royalty payment; and

- January 31, 2014 deduction of approximately 39% from the royalty payment.

By taking these (and other) deductions, and thereby reducing royalty payments, Defendants capitalized on a contract to which they were not parties, but through which they could produce guaranteed revenue by forcing class members to pay grossly inflated deductions.

Notably, Chesapeake reported to investors in September 2013 that its expenses related to pipeline and marketing business roughly doubled in the months after it sold certain pipelines and that its revenues for that part of the business also increased accordingly, covering the new costs.[22]

Industry analysts were at a loss to explain it. As reported by ProPublica:

- Kevin Kaiser, a financial analyst with Hedgeye, a private equity group in New York, stated, "[t]he change in marketing, gathering, compression revenue and expense is staggering."
- Fadel Gheit, a seasoned industry analyst for the investment firm Oppenheimer, who estimated the figure was off by a decimal point before later confirming that it matched the numbers Chesapeake had reported to the SEC, stated, "[s]omething is wrong with this calculation … It can't be."
- None of the financial analysts who cover Chesapeake that ProPublica spoke with could explain the explosion in Chesapeake's marketing and transportation revenues and expenses using oil sales alone.[23]

**USE OF INTERSTATE MAILS AND WIRES TO CAUSE INJURY TO PLAINTIFFS**

The scheme alleged herein constitutes mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. The conduct of Defendants and their co-conspirator, Chesapeake Appalachia, as described in this complaint, constituted the execution of a scheme and artifice to deprive oil and gas lessors in Pennsylvania of royalties properly due them by means of fraudulent pretenses and representations through the use of the United States mail, in violation of 18 U.S.C. § 1341. Their use of the mails formed a central feature of the scheme and included, by way of example

---

[22] See ProPublica Report.
[23] Id.

and as described above, sending oil and gas lessors royalty statements and royalty payments which reflected deductions for artificially inflated gas gathering and transportation fees pursuant to gathering agreements.

Hundreds, and likely many thousands, of such royalty statements and royalty payments have been sent to Pennsylvania lessors through the mails and wires across state lines. Each of these statements and payments fraudulently represented that deductions for gas gathering and transportation costs were legitimately incurred and constituted permissible deductions from royalties under the oil and gas leases.

Moreover, Defendants and their co-conspirator, Chesapeake Appalachia, made fraudulent and untrue statements regarding deductions and volume adjustments for marketing that were represented to reflect legitimate costs rather than the scheme as alleged herein, including by multiple email transmissions on July 31, 2013. See Exhibit H.

By way of example only, because there are numerous additional instances, royalty statements sent to Plaintiffs, attached hereto as Exhibit D, and described in detail further herein, each represent an instance of mail fraud on the following dates: October 23, 2012, November 21, 2012, February 21, 2013, April 23, 2013, May 23, 2013, July 24, 2013, October 23, 2013, January 31, 2014.

The conduct described above constituted multiple violations of mail fraud, 18 U.S.C. § 1341, which is a predicate offense for purposes of 18 U.S.C. § 1962(c).

In addition, Defendants and their co-conspirator, Chesapeake Appalachia, have, on a monthly basis transferred payments between themselves by wire, which payments were made pursuant to the non-arm's length and conspiratorial agreements described herein. This conduct constituted multiple violations of wire fraud, 18 U.S.C. § 1343, which is a predicate offense for

purposes of 18 U.S.C. § 1962(c).

The scheme alleged herein also constitutes "honest services" fraud in violation of 18 U.S.C. § 1346. The wire fraud and mail fraud statutes make it a crime to, inter alia, devise a scheme to deprive another of "honest services." The mail fraud statute reads in relevant part as follows:

> "Whoever, having devised . . . any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises . . . [uses the mails in furtherance of the scheme shall be punished by imprisonment or fine or both]."

18 U.S.C. § 1341.

The wire fraud statute is in relevant respects identical. See 18 U.S.C. § 1343. Congress broadened the scope of the mail and wire fraud statutes by enacting 18 U.S.C. § 1346. That section provides:

> "For the purposes of this chapter [including § 1341 and § 1343], the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right to honest services."

18 U.S.C. § 1346.

At all relevant times, Defendants and their co-conspirator, Chesapeake Appalachia, owed legal duties to render services to lessors. In all cases, those duties included extracting oil and natural gas and deducting expenses only where appropriate. The value of these services depended on Defendants and Chesapeake Appalachia rendering those services in an honest manner.

Nevertheless, Defendants misused their position and thereby breached their obligation to render "honest services" to lessors. Defendants devised a scheme or artifice to defraud Plaintiffs and other land owners of their intangible right to Chesapeake Appalachia's honest services through these inflated deductions.

---

The wire and mail fraud violations carried out by Defendants, including "honest services" fraud, constitute predicate acts under RICO. The pattern of racketeering activity alleged herein has proximately harmed Plaintiffs.

## VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §§ 1961-1968

Plaintiffs incorporate the preceding allegations by reference.

Plaintiffs and each Defendant are "persons," as that term is defined in 18 U.S.C. §§ 1961(3) and 1962(c).

**The Enterprise.**

For purposes of this claim, the RICO "enterprise" is an association-in fact, as the term is defined in 18 U.S.C. §§ 1961(4) and 1962(c), consisting of Defendants, including their respective officers, directors, employees, agents, and direct and indirect subsidiaries (the "Enterprise"). The Enterprise was separate and distinct from the persons that constituted the Enterprise.

The Enterprise was primarily managed by Chesapeake, which organized the fraudulent scheme and procured the involvement of Access Midstream. Each of the Defendants, however, agreed to, and did, participate in the conduct of the Enterprise, and carried out their roles using broad and independent discretion.

The companies and individuals that constitute the Enterprise were associated for the common purpose of defrauding leaseholders by overcharging them for costs associated with extraction of oil and natural gas which the coconspirators deemed to be expressly permitted by leaseholder agreements between lessors and Chesapeake Appalachia. At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce. The proceeds of the Enterprise were distributed to its participants, including Chesapeake and Access Midstream.

The Enterprise has operated since at least 2010, and its operation is ongoing. The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants engage. The Pattern of Racketeering Activity

At all relevant times, in violation of 18 U.S.C. § 1962(c), the Defendants conducted the affairs of the Enterprise through a pattern of racketeering activity as defined in RICO, 18 U.S.C. § 1961(5), by virtue of the conduct described in this complaint. The Defendants have conducted the affairs of the Enterprise and participated in the operation and management thereof at least through the following conduct:

 a. Defendants knew that the fees charged by Access Midstream, including under the Marcellus Gathering Agreement, were far in excess of the   market rates of such fees;

 b. Defendants also knew and agreed that Access Midstream would rebate a portion of these inflated fees to Chesapeake and its subsidiaries and affiliates, ostensibly for the use of other equipment and services;

 c. Defendants also knew and agreed that the inflated gas gathering and trans - portation fees would be passed along to Pennsylvania oil and gas lessors by Chesapeake Appalachia in the form of cost deductions from the lessors' royalty payments;

 d. The unlawful conduct by Defendants, through the alleged association-in fact Enterprise, deprived thousands of lessors of their rightful royalty payments, was continuous and open-ended, and was intended to continue, and continues today; and

 e. Plaintiffs were the intended targets of the scheme that was facilitated by the knowing and purposeful involvement of Defendants.

The financial harms suffered by Plaintiffs and members of the Class were the direct result of that conduct and were the intended and reasonably foreseeable consequence of such conduct.

**The Predicate Acts of Mail and Wire Fraud Including "Honest Services" Fraud.**

The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Specifically, Defendants engaged in an intentional scheme or artifice to defraud lessors and to obtain money or property from said lessors through false or fraudulent pretenses, representations, and promises.

The conduct of Defendants in violation of the mail and wire fraud statutes included, without limitation, a fraudulent scheme to deprive the lessors of their intangible rights to Chesapeake Appalachia's "honest services" in violation of 18 U.S.C. § 1346.

As alleged herein, Chesapeake Appalachia owed a contractual obligation to render services to the lessors. Chesapeake Appalachia owed a duty to render those services in an honest manner. Nevertheless, Defendants misused their position to interfere with the contractual obligations to which the lessors were entitled. Chesapeake Appalachia thereby was caused to breach its obligations to render "honest services." Defendants also owed a duty not to charge unreasonable fees to Chesapeake Appalachia which, known by Defendants, would be passed on to lessors.

Each of the Defendants intentionally and willfully conspired and participated in the "honest services" violations. Specifically, each of the Defendants participated in devising and carrying out the scheme through the activities alleged above.

It was reasonably foreseeable to the Defendants that the mails and/or wires would be used in furtherance of the scheme, and the mails and/or wires were in fact used to further and execute the scheme.

The nature and pervasiveness of the Enterprise necessarily entailed frequent wire and/or mail transmissions. The precise dates of such transmissions cannot be alleged without access to the books and records of the Defendants.

Nevertheless, Plaintiffs can allege such transmissions generally and with reference to the royalty statements attached hereto as Exhibit D.

For the purpose of furthering and executing the scheme, the Defendants regularly transmitted and caused to be transmitted by means of wire communication in interstate

commerce writings, electronic data, and funds, and also regularly caused matters and things to be placed in post offices or authorized depositories, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier.

Defendants utilized the mails and/or wires for the purpose of furthering and executing the scheme.

The royalty statements attached as Exhibit D are only examples of instances of the pattern of racketeering activity consisting of mail and/or wire fraud violations engaged in by the Defendants. Each electronic and/or postal transmission was incident to an essential part of the scheme.

Additionally, each such electronic and/or postal transmission constituted a predicate act of wire and/or mail fraud in that each transmission furthered and executed the scheme to defraud lessors.

Defendants each participated in the scheme to defraud knowingly, willfully, and with a specific intent to defraud lessors into paying and/or incurring falsely inflated, unauthorized charges in connection with their oil and gas leases.

The predicate acts of mail and wire fraud constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events, but were related acts aimed at the common purpose and goal of defrauding lessors to pay and incur the falsely inflated, unauthorized charges with respect to oil and gas leases and thereby enable Defendants to reap illicit profits.

Defendants were common participants in the predicate acts. Their activities amounted to a common course of conduct, with similar pattern and purpose, intended to deceive lessors. Injury to Plaintiffs.

As a direct and proximate result of violations of 18 U.S.C. § 1962(c) by Defendants, Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

Plaintiffs paid falsely inflated, unauthorized royalty deductions by reason, and as a direct, proximate, and foreseeable result, of the scheme alleged. Plaintiffs' continued payment of inflated and unreasonable deductions evidence their reliance on the Defendants' misstatements. 105. Moreover, the overcharging of Plaintiffs es for gathering services was an integral and necessary part of the scheme, as those overcharges constituted repayment of, among other things, the cash payment made by Access Midstream to Chesapeake and referenced in the ProPublica Report.

Under the provisions of 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to Plaintiffs for three times the damages sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

## CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(d)

Plaintiffs incorporate the preceding allegations by reference.

RICO, 18 U.S.C. § 1962(d), provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

The Defendants have violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).

As set above, at all relevant times, Plaintiffs were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

As also set forth above, at all relevant times, Defendants were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(d).

Defendants formed the previously alleged association-in-fact Enterprise, within the meaning of 18 U.S.C. § 1961(4), for the common purpose of fraudulently overcharging lessors with respect to royalty deductions. The purpose thereof was to induce lessors to pay or incur fraudulently inflated, improper royalty deductions.

The Enterprise was engaged in, and its activities affected interstate commerce within the meaning of 18 U.S.C. § 1962(c).

As set forth above, Defendants conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) in violation of 18 U.S.C. § 1962(c).

Defendants were each associated with the Enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), and agreed to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to accomplish the objects thereof, including but not limited to the acts set forth herein.

As a direct and proximate result of the overt acts and predicate acts of in furtherance of violating 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(c), Plaintiffs have been and are continuing to be injured in their business and property in an amount to be determined at trial. Such injuries include, but are not limited to, fraudulently inflated royalty deductions, as a direct, proximate, and foreseeable result of the scheme alleged herein.

Under the provisions of 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to Plaintiffs for three times the damages sustained, plus the costs of bringing this suit, including

reasonable attorneys' fees.

## COUNT 9: CIVIL CONSPIRACY

Plaintiffs incorporate the preceding allegations by reference. Defendants have conspired and combined with each other, and with third parties, to make wrongful deductions from leaseholders' royalty payments, and have achieved a meeting of the minds, through either express or tacit agreement, on an object or course of action of the conspiracy, including depriving Plaintiffs of their right to royalties pursuant to leasehold contracts.

Defendants have formed and operated a civil conspiracy with each other, performing as a part of the conspiracy numerous overt acts in furtherance of the common design, including one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal. Defendants conspired to convert Plaintiffs' 's property.

Defendants intended to injure, and succeeded in injuring, Plaintiffs to the extent of the wrongful deductions alleged herein without legal justification.

As a result of the conduct of Defendants and the conspiracy, Plaintiffs have been damaged as described herein.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered and continue to suffer damages. Plaintiffs are entitled to recover from Defendants all damages and costs permitted.

## COUNT 10: ATTORNEY'S FEES & PRE & POST-JUDGMENT INTEREST

6.01   Plaintiffs incorporate by reference all preceding paragraphs.

6.02   As a result of Chesapeake's actions and the need to protect their interests, the Plaintiffs have retained the law firm of Craig M. Crockett, P.C. to represent the Plaintiffs in this action.

6.03   Plaintiffs have agreed to pay the law firm of Craig M. Crockett, P.C. attorneys' fees.

6.04   Plaintiffs plead that they are each a "person interested under a deed, will, written contract…whose rights, status, or other legal relations are affected by a contract" as set forth in Texas Civil Practice & Remedies Code 37.004.

6.05   Plaintiffs seek costs and attorney's fees as allowed by Texas Civil Practice & Remedies Code Chapters 37 and/or 38.

6.06   Plaintiffs seek prejudgment and post-judgment interest on all damages and/or attorney's fees to which Plaintiffs are entitled, pursuant to Section 304 of the Texas Finance Code, other statutory provisions, the common law, and equity.

### COUNT 9: JOINT AND SEVERAL LIABILITY

6.07   Plaintiffs incorporate by reference all preceding paragraphs.

6.08   Upon information and belief, Defendants Chesapeake Operating, Inc., Chesapeake Operating, L.L.C., Chesapeake Exploration, L.L.C. as successor by merger to Chesapeake Exploration, L.P. and Chesapeake Energy Marketing, Inc. were fraudulently set up, used and maintained to serve the purpose of evading existing legal obligations and escaping liabilities incurred by the Chesapeake Defendants. These entities acted and conspired in concert through the use of common offices, employees, centralized accounting and shared financing; all centered at the State of Texas at 100 Pier 1 Place, Fort Worth, Tarrant County, Texas 76102. Thus Defendants Chesapeake Operating, Inc., Chesapeake Operating, L.L.C., Chesapeake

Exploration, L.L.C., Chesapeake Exploration, L.P. and Chesapeake Energy Marketing, Inc. are considered in violation of the Texas Business Corporation Act § 2.21A(2) and/or the Texas Business Organizations Code for the purpose of perpetuating a fraud against Plaintiffs.

6.09 Further, any corporate separation that may appear to exist between the subsidiary corporations, the corporation's shareholders, and the parent corporation, should be disregarded, because Defendants, singularly or in combination with each other are **"alter egos"** of the shareholders, and the subsidiary corporations are **"alter egos"** of the parent corporations. Furthermore, it is evident that the parent corporations are using the corporate form and/or structure illegally, as mere tools and conduits, for the following reasons:

a.  To escape or evade legal obligations;

b.  To perpetrate fraud;

c.  To escape liability; and,

d.  To achieve an inequitable result.

6.10 Additionally and/or alternatively, the Chesapeake Defendants have subjected themselves to vicarious liability for the acts and omissions of each other. were organized and are operating as a mere tool, agent, or business conduit for were each other and fraudulently set up, used and maintained to serve the purpose of evading existing legal obligations and escaping liabilities incurred by Defendant Chesapeake Energy Corporation. Plaintiffs therefore seek to impose vicarious liability on all Chesapeake Defendants for any and all damages proximately caused by Defendants Chesapeake Operating, Inc., Chesapeake Operating, L.L.C., Chesapeake Exploration, L.L.C., Chesapeake Exploration, L.P. and Chesapeake Energy Marketing, Inc.

6.11  Additionally and/or alternatively, Plaintiffs incorporate by reference all preceding paragraphs and allege that any corporate separation that may appear to exist between the subsidiary entities, the corporation's shareholders or members, and the parent corporations should be disregarded, because the Defendants, singularly or in combination with each other are a **"joint enterprise"** that, along with others un-named in this suit, associated together and integrate their resources to achieve a common business purpose, namely that of substantially overcharging the Plaintiffs and thousands of others for postproduction expenses to make billions of dollars by hedging gas on the market while not paying the Plaintiffs' gas royalties due and payable to Plaintiffs through the use of a.)  common employees; b.) common offices, c.) centralized accounting, d.) payment of wages by one entity to another entity's principals or employees, e.) common business name, f.) services rendered by the employees of one entity on behalf of another entity, g.) undocumented transfers of funds between entities; h.) unclear allocation of profits and losses between the parent entity, shareholders and the subsidiary entities; i.) reached an agreement among each other; j.) for the common purpose stated; k.) had common pecuniary or business interests; and l.)  had an equal right to a voice in the enterprise giving an equal right to control the enterprise.

6.12  Additionally and/or alternatively, Plaintiffs incorporate by reference all preceding paragraphs and allege that any corporate separation that may appear to exist between the subsidiary entities, the corporation's shareholders or members, and the parent corporations should be disregarded, because the Defendants, singularly or in combination with each other are a **"joint venture."**  The Defendants: a.) shared a community of interest in the venture to substantially overcharge the Plaintiffs and thousands of others for postproduction expenses to make billions of dollars by  hedging gas on the market while not paying the Plaintiffs' gas

royalties due and payable to Plaintiffs through the use of through; a.) an agreement to share profits and losses; and b.) a mutual right of control or management over Defendants Chesapeake Operating, Inc., Chesapeake Operating, L.L.C., Chesapeake Exploration, L.L.C., Chesapeake Exploration, L.P. and Chesapeake Energy Marketing, Inc. as the alter egos of Chesapeake Energy and each other.

6.13  While there is a great deal of overlap between the Chesapeake entities, and all are controlled ultimately by Chesapeake Energy, Chesapeake Operating Inc. and L.L.C. undertook to drill and operate the wells on the Properties described herein; CEMI undertook to market production from the Plaintiffs' Properties.

### VIII. PUNITIVE DAMAGES

7.01  Plaintiffs incorporate herein the preceding paragraphs and allege that the facts and causes of action give rise to the following relief at law and in equity, each plead alternatively, against Defendants, for conduct described as a felony, knowingly committed, which caused contributed in causing injury to Plaintiffs. Accordingly, Plaintiffs respectfully requests the following relief at law and equity.

7.02  Defendants' courses of conduct under § 41.005(b) (1) and (c) of TEX. CIV. PRAC. & REM. CODE, justifies and requires, the imposition of exemplary damages under § 41.003 of TEX. CIV. PRAC. & REM. CODE against Defendants in order to punish and discourage Defendants and others from the type of egregious conduct and omissions alleged hereinabove.

7.03  Punitive damages should be assessed against Defendants in an amount in accordance with § 41.008(a) and (b) of TEX. CIV. PRAC. & REM. CODE, unless it is determined by the trier that its award of exemplary damages is based upon conduct as alleged hereinabove,

knowingly committed, and described as a felony under § 31.03 *et seq.* Tex. Penal Code (Felony Amount/Level Theft).

7.04    Defendants did, knowingly acquired or maintained an interest in, or received or possessed or transferred funds which were the proceeds of criminal activity, namely fraud and theft of funds over $100,000 derived from overcharging the Plaintiffs and thousands of others for postproduction expenses to make billions of dollars by hedging gas on the market while not paying the Plaintiffs' gas royalties due and payable to Plaintiffs, the direct and proximate result of which caused a benefit to Defendants and caused Plaintiff to suffer special and compensatory damages to be proven at trial.

7.05    Defendants did, knowingly exercise control over property to wit: the Plaintiffs and thousands of others' gas royalties payments in US Dollars with the intent to permanently deprive the owners (Plaintiffs) of their gas royalty payments in US Dollars, affecting property and/or the pecuniary interest of Plaintiffs, the direct and proximate result of which caused a benefit to Defendants and caused Plaintiffs to suffer special and compensatory damages to be proven at trial..

7.06    If the trier determines that its award of exemplary damages is based upon Defendants' violation of conduct described as a felony, Plaintiffs prays that the jury will be UNLIMITED in its assessment of exemplary damages under Tex. Civ. Prac. Rem. Code §41.008(c) (13)[24] based upon Defendants' knowing conduct as alleged hereinabove and described as a felony under § 31.03 *et seq.* Tex. Penal Code (Felony Amount/Level Theft).

---

[24] Tex. Civ. Prac. Rem. Code §41.008(c)  This section does not apply to a cause of action against a defendant from whom a plaintiff seeks recovery of exemplary damages based on conduct described as a felony in the following sections of the Penal Code if, except for Sections 49.07 and 49.08, the conduct was committed knowingly or intentionally:

(13) Chapter 31 (theft) the punishment level for which is a felony of the third degree or higher…."

## VIII. DEMAND FOR JURY TRIAL

8.01    Plaintiffs demand the causes of actions alleged herein be tried before a jury

## IX.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that all of the Defendants be cited to appear and answer herein, and that upon final hearing or trial, Plaintiffs have and recover judgment from Defendants as follows:

(a)    Damages caused by Defendants' breach of the relevant leases and assignments in an amount to be proven at trial but exceeding $75,000;

(b)    An accounting as described above;

(c)    Declaratory Judgment and Monetary Judgment against Defendants for a sum within the jurisdictional limits of this Court for all actual damages, both past and future, as described above;

(d)    Plaintiffs' Reasonable and necessary attorney's fees;

(e)    Pre- and post-judgment interest according to law;

(f)    All costs of suit; and

(g)    All such other and further relief, both general and special, at law or inequity, to which the Plaintiffs may show themselves justly to be entitled and for which it will ever pray.

Respectfully Submitted,

## THE CROCKETT FIRM

---

By:_____

    Craig M. Crockett
    State Bar No. 00790533
    5201 Camp Bowie Blvd. Suite 200
    Fort Worth, Texas 76107
    Telephone: 817-810-0400
    Telecopier: 817-719-9450
    E-Mail: craig@crockettfirm.com

    ATTORNEYS FOR PLAINTIFFS

# EXHIBIT E-2

THE STATE OF TEXAS                                          **ORIGINAL**
DISTRICT COURT, TARRANT COUNTY

## CITATION                                    Cause No. 048-290718-17

FILED
TARRANT COUNTY
3/17/2017 4:15:54 PM
THOMAS A. WILDER
DISTRICT CLERK

FLEET OIL AND GAS, LTD, ET AL
VS.
CHESAPEAKE ENERGY CORPORATION, ET AL

To and through the Secretary Of State, Statutory Documents Section, PO Box 12079, Austin TX 78711-2079
TO: CHESAPEAKE ENERGY COPRORATION

B/S CT CORPORATION SYSTEM REG AGT 1999 BRYAN ST STE 900 DALLAS, TX 75201-313

SERVICE OF PROCESS MAY BE HAD UPON DEFENDANT BY DELIVERING TO THE SECRETARY OF STATE, OF THE STATE OF TEXAS, DUPLICATE
COPIES OF THIS CITATION TOGETHER WITH DUPLICATE COPIES OF THE PLAINTIFF'S PETITION ATTACHED HERETO.

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 48th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFFS being

FLEET OIL AND GAS LTD, 5600 ROCKHILL HOMES LTD, LONGTIDE PROPERTIES LTD, VLMC INC, AMERICAN ROYALTIES LTD, AMERICAN
ROYALTIES-LA, LEWISVILLE 7 PARTNERS LTD, HUBEND 54 LTD, PARTNERSHIP EQUITY LTD
Filed in said Court on February 28th, 2017 Against
CHESAPEAKE ENERGY COPRORATION, CHESAPEAKE OPERATING INC, CHESAPEAKE OPERATING LLC, CHESAPEAKE ENERGY MARKETING INC,
TOTAL E&P USA INC, ACCESS MIDSTREAM, CHESAPEAKE EXPLORATION LP
For suit, said suit being numbered 048-290718-17 the nature of which demand is as shown on said
PLAINTIFFS' ORIGINAL PETITION  a copy of which accompanies this citation.

CRAIG M CROCKETT
Attorney for FLEET OIL AND GAS LTD Phone No. (817)810-0400
Address     5201 CAMP BOWIE BLVD STE 200 FORT WORTH, TX 76107

_____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 2nd day of March, 2017.

By _Anthony Ferrara_
ANTHONY FERRARA

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

---

### OFFICER'S RETURN *04829071817000004*

Received this Citation on the _16_ day of _MARCH_ ,_2017_ at _1:00_ o'clock _P_M; and executed at
_1999 BRYAN ST. DALLAS_ within the county of _DALLAS_ , State of _TEXAS_ at _2:55_ o'clock _P_M
on the _16_ day of _MARCH_ , _2017_ by delivering to the within named (Def.): _CHESAPEAKE_
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION
, having first endorsed on same the date of delivery. _ENERGY CORPORATION DELIVERED TO_
_KELVIN BENNETT AT REG. AGT. CT CORPORATION SYSTEM._

_____ Authorized Person/Constable/Sheriff: _Jerry Caldwell_ JERRY CALDWELL   _SCH9785_
                                                                            _7-31-18_
County of _TARRANT_ State of _TEXAS_ By _____ Deputy

Fees $ _____

State of _Texas_ County of _Tarrant_     (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _Jerry Caldwell_ before me this _17th_ day of _March 2017_
to certify which witness my hand and seal of office

County of _Tarrant_ , State of _Tx_

CHRISTOPHER J. FIORE
Notary Public, State of Texas
Comm. Expires 12-22-2019
Notary ID 11826697

# CITATION

Cause No. 048-290718-17

FLEET OIL AND GAS, LTD., ET AL

VS.

CHESAPEAKE ENERGY CORPORATION, ET AL

ISSUED

This 2nd day of March, 2017

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By      ANTHONY FERRARA Deputy

CRAIG M CROCKETT
Attorney for: FLEET OIL AND GAS LTD
Phone No. (817)810-0400
ADDRESS: 5201 CAMP BOWIE BLVD STE 200

FORT WORTH, TX 76107

*CIVIL LAW*

*04829071817000004*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

# EXHIBIT E-3

| THE STATE OF TEXAS | **ORIGINAL** |
|---|---|

## DISTRICT COURT, TARRANT COUNTY

*CITATION*                     *Cause No. 048-290718-17*

FILED
TARRANT COUNTY
3/17/2017 4:15:54 PM
THOMAS A. WILDER
DISTRICT CLERK

FLEET OIL AND GAS, LTD, ET AL
VS.
CHESAPEAKE ENERGY CORPORATION, ET AL

To and through the Secretary Of State, Statutory Documents Section, PO Box 12079, Austin TX 78711-2079
TO: CHESAPEAKE OPERATING INC

B/S CT CORPORATION SYSTEM REG AGT 1999 BRYAN ST STE 900 DALLAS, TX 75201-

SERVICE OF PROCESS MAY BE HAD UPON DEFENDANT BY DELIVERING TO THE SECRETARY OF STATE, OF THE STATE OF TEXAS, DUPLICATE
COPIES OF THIS CITATION TOGETHER WITH DUPLICATE COPIES OF THE PLAINTIFF'S PETITION ATTACHED HERETO.

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 48th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFFS being

FLEET OIL AND GAS LTD, 5600 ROCKHILL HOMES LTD, LONGTIDE PROPERTIES LTD, VLMC INC, AMERICAN ROYALTIES LTD, AMERICAN
ROYALTIES-LA, LEWISVILLE 7 PARTNERS LTD, HUBEND 54 LTD, PARTNERSHIP EQUITY LTD
Filed in said Court on February 28th, 2017 Against
CHESAPEAKE ENERGY COPRORATION, CHESAPEAKE OPERATING INC, CHESAPEAKE OPERATING LLC, CHESAPEAKE ENERGY MARKETING INC,
TOTAL E&P USA INC, ACCESS MIDSTREAM, CHESAPEAKE EXPLORATION LP
For suit, said suit being numbered 048-290718-17 the nature of which demand is as shown on said
PLAINTIFFS' ORIGINAL PETITION  a copy of which accompanies this citation.

CRAIG M CROCKETT
Attorney for FLEET OIL AND GAS LTD Phone No. (817)810-0400
Address    5201 CAMP BOWIE BLVD STE 200 FORT WORTH, TX 76107

_____Thomas A. Wilder_____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 2nd day of March, 2017.

By *Anthony Ferrara*
ANTHONY FERRARA

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

### OFFICER'S RETURN *04829071817000005*

Received this Citation on the _16_ day of _MARCH_ , _2017_ at _1:00_ o'clock _P_M; and executed at
_1999 BRYAN ST. DALLAS_ within the county of _DALLAS_ , State of _TEXAS_ at _2:55_ o'clock _P_ M
on the _16_ day of _MARCH_ , ____ by delivering to the within named (Def.): _CHESAPEAKE_
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION
, having first endorsed on same the date of delivery. _OPERATING INC. DELIVERED TO_
_KELVIN BENNETT AT REG AGT. CT CORPORATION SYSTEM_

Authorized Person/Constable/Sheriff _Jerry Caldwell_ JERRY CALDWELL SCH 9785
County of _TARRANT_ State of _TEXAS_ By _____ 7-31-18 Deputy

Fees $_____
State of _TEXAS_ County of _TARRANT_ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _JERRY CALDWELL_ before me this _17th_ day of _MARCH 2017_
to certify which witness my hand and seal of office
(S___)       CHRISTOPHER J. FIORE
            Notary Public, State of Texas
            Comm Expires 12-22-2019     County of _TARRANT_ , State of _TX_
            Notary ID 11826097

*CITATION*

Cause No. 048-290718-17

FLEET OIL AND GAS, LTD, ET AL

VS.

CHESAPEAKE ENERGY CORPORATION,
ET AL

ISSUED

This 2nd day of March, 2017

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By        ANTHONY FERRARA Deputy

CRAIG M CROCKETT
Attorney for: FLEET OIL AND GAS LTD
Phone No. (817)810-0400
ADDRESS: 5201 CAMP BOWIE BLVD STE 200

FORT WORTH, TX 76107

*CIVIL LAW*

*04829071817000005*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

# EXHIBIT E-4

THE STATE OF TEXAS                          **ORIGINAL**
DISTRICT COURT, TARRANT COUNTY

**CITATION**                          Cause No. 048-290718-17

FLEET OIL AND GAS, LTD, ET AL
VS.
CHESAPEAKE ENERGY CORPORATION, ET AL

FILED
TARRANT COUNTY
3/17/2017 4:15:54 PM
THOMAS A. WILDER
DISTRICT CLERK

To and through the Secretary Of State, Statutory Documents Section, PO Box 12079, Austin TX 78711-2079
TO: CHESAPEAKE OPERATING LLC

B/S CT CORPORATION SYSTEM REG AGT 1999 BRYAN ST STE 900 DALLAS, TX 75201-

SERVICE OF PROCESS MAY BE HAD UPON DEFENDANT BY DELIVERING TO THE SECRETARY OF STATE, OF THE STATE OF TEXAS, DUPLICATE
COPIES OF THIS CITATION TOGETHER WITH DUPLICATE COPIES OF THE PLAINTIFF'S PETITION ATTACHED HERETO.

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 48th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFFS being

FLEET OIL AND GAS LTD, 5600 ROCKHILL HOMES LTD, LONGTIDE PROPERTIES LTD, VLMC INC, AMERICAN ROYALTIES LTD, AMERICAN
ROYALTIES-LA, LEWISVILLE 7 PARTNERS LTD, HUBEND 54 LTD, PARTNERSHIP EQUITY LTD
Filed in said Court on February 28th, 2017 Against
CHESAPEAKE ENERGY COPRORATION, CHESAPEAKE OPERATING INC, CHESAPEAKE OPERATING LLC, CHESAPEAKE ENERGY MARKETING INC,
TOTAL E&P USA INC, ACCESS MIDSTREAM, CHESAPEAKE EXPLORATION LP
For suit, said suit being numbered 048-290718-17 the nature of which demand is as shown on said
PLAINTIFFS' ORIGINAL PETITION  a copy of which accompanies this citation.

**CRAIG M CROCKETT**
Attorney for FLEET OIL AND GAS LTD Phone No. (817)810-0400
Address    5201 CAMP BOWIE BLVD STE 200 FORT WORTH, TX 76107

_____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and seal
of said Court, at office in the City of Fort Worth, this the 2nd day of March, 2017.

By _Anthony Ferrara_
ANTHONY FERRARA

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

**OFFICER'S RETURN  \*04829071817000006\***
Received this Citation on the _16_ day of _MARCH_         _2017_ at _1:00_ o'clock _P_M; and executed at
_1999 BRYAN ST, DALLAS_ within the county of _DALLAS_ , State of _TEXAS_ at _2:55_ o'clock _P_M
on the _16_ day of _MARCH_ , _2017_ by delivering to the within named (Def.): _CHESAPEAKE_
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION
, having first endorsed on same the date of delivery. _OPERATING LLC DELIVERED TO_
_KELVIN BENNETT AT REG. AGT CT CORPORATION SYSTEM_

Authorized Person/Constable/Sheriff: _Jerry Caldwell JERRY CALDWELL_  SCH9785
County of _TARRANT_ State of _TEXAS_ By _____ Deputy       7-3-18

Fees $ _____
State of _TEXAS_ County of _DALLAS_  (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _Jerry Caldwell_ before me this _17_ day of _March 2017_
to certify which witness my hand and seal of office

County of _Dallas_ , State of _TX_

CHRISTOPHER J. FIORE
Notary Public, State of Texas
Comm. Expires 12-22-2019
Notary ID 11826607

*CITATION*

---

Cause No. 048-290718-17

FLEET OIL AND GAS, LTD, ET AL

vs.

CHESAPEAKE ENERGY CORPORATION,
ET AL

ISSUED

This 2nd day of March, 2017

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By        ANTHONY FERRARA Deputy

---

CRAIG M CROCKETT
Attorney for: FLEET OIL AND GAS LTD
Phone No. (817)810-0400
ADDRESS: 5201 CAMP BOWIE BLVD STE 200

FORT WORTH, TX 76107

*CIVIL LAW*

*04829071817000006*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

# EXHIBIT E-5

048-290718-17

THE STATE OF TEXAS                                    **ORIGINAL**
DISTRICT COURT, TARRANT COUNTY

*CITATION*                              *Cause No. 048-290718-17*

FLEET OIL AND GAS, LTD, ET AL                    FILED
                                              TARRANT COUNTY
VS.                                        3/17/2017 4:15:54 PM
                                            THOMAS A. WILDER
CHESAPEAKE ENERGY CORPORATION, ET AL            DISTRICT CLERK

To and through the Secretary Of State, Statutory Documents Section, PO Box 12079, Austin TX 78711-2079
TO: CHESAPEAKE EXPLORATION LLC
SUCCESSOR TO CHESAPEAKE EXPLORATION LP         B/S CT CORPORATION SYSTEM REG AGT 1999 BRYAN ST STE 900 DALLAS, TX 75201-

SERVICE OF PROCESS MAY BE HAD UPON DEFENDANT BY DELIVERING TO THE SECRETARY OF STATE, OF THE STATE OF TEXAS, DUPLICATE
COPIES OF THIS CITATION TOGETHER WITH DUPLICATE COPIES OF THE PLAINTIFF'S PETITION ATTACHED HERETO.

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 48th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFFS being

FLEET OIL AND GAS LTD, 5600 ROCKHILL HOMES LTD, LONGTIDE PROPERTIES LTD, VLMC INC, AMERICAN ROYALTIES LTD, AMERICAN
ROYALTIES-LA, LEWISVILLE 7 PARTNERS LTD, HUNDRED 54 LTD, PARTNERSHIP EQUITY LTD
Filed in said Court on February 28th, 2017 Against
CHESAPEAKE ENERGY COPRORATION, CHESAPEAKE OPERATING INC, CHESAPEAKE OPERATING LLC, CHESAPEAKE ENERGY MARKETING INC,
TOTAL E&P USA INC, ACCESS MIDSTREAM, CHESAPEAKE EXPLORATION LP
For suit, said suit being numbered 048-290718-17 the nature of which demand is as shown on said
PLAINTIFFS' ORIGINAL PETITION  a copy which accompanies this citation.

CRAIG M CROCKETT
Attorney for FLEET OIL AND GAS LTD Phone No. (817)810-0400
Address     5201 CAMP BOWIE BLVD STE 200 FORT WORTH, TX 76107

_____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 2nd day of March, 2017.

By _Anthony Ferrara_

ANTHONY FERRARA

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.
Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

**OFFICER'S RETURN *0482907181700007***

Received this Citation on the _16_ day of _MARCH_ , _2017_ at _1:00_ o'clock _P_M; and executed at
_1999 BRYAN ST. DALLAS_ within the county of _DALLAS_ , State of _TEXAS_ at _2:55_ o'clock _P_M
on the _16_ day of _MARCH_ _2017_ by delivering to the within named (Def.): _CHESAPEAKE_
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION
, having first endorsed on same the date of delivery. _EXPLORATION LLC DELIVERED TO_
_KELVIN BENNETT AT REG. AGT. CT CORPORATION SYSTEM_

Authorized Person/Constable/Sheriff: _Jerry Caldwell_ JERRY CALDWELL _SCN 9785_
County of ___TARRANT___   State of _TEXAS_ by _____ _7-3-18_  Deputy

Fees $_____
State of _TEXAS_ County of _Tarrant_ _____ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _Jerry Caldwell_ before me this _17_ day of _March 2017_
_____ and seal of office

(Seal)
CHRISTOPHER J FIORE
Notary Public, State of Texas
Comm. Expires 12-22-2019     County of ___Tarrant___ , State of _TX_
Notary ID 11826097

*CITATION*

Cause No. 048-290718-17

FLEET OIL AND GAS, LTD, ET AL

VS.

CHESAPEAKE ENERGY CORPORATION,
ET AL

ISSUED

This 2nd day of March, 2017

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By        ANTHONY FERRARA Deputy

CRAIG M CROCKETT
Attorney for: FLEET OIL AND GAS LTD
Phone No. (817)810-0400
ADDRESS: 5201 CAMP BOWIE BLVD STE 200

FORT WORTH, TX 76107

*CIVIL LAW*

*0482907181700007*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

# EXHIBIT E-6

048-290718-17

THE STATE OF TEXAS                                        **ORIGINAL**
DISTRICT COURT, TARRANT COUNTY

## CITATION                              Cause No. 048-290718-17

FLEET OIL AND GAS, LTD, ET AL
VS.
CHESAPEAKE ENERGY CORPORATION, ET AL

FILED
TARRANT COUNTY
3/17/2017 4:15:54 PM
THOMAS A. WILDER
DISTRICT CLERK

To and through the Secretary Of State, Statutory Documents Section, PO Box 12079, Austin TX 78711-2079
TO: CHESAPEAKE ENERGY MARKETING INC

B/S CT CORPORATION SYSTEM REG AGT 1999 BRYAN ST STE 900 DALLAS, TX 75201-

SERVICE OF PROCESS MAY BE HAD UPON DEFENDANT BY DELIVERING TO THE SECRETARY OF STATE, OF THE STATE OF TEXAS, DUPLICATE
COPIES OF THIS CITATION TOGETHER WITH DUPLICATE COPIES OF THE PLAINTIFF'S PETITION ATTACHED HERETO.
You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 48th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFFS being

FLEET OIL AND GAS LTD, 5600 ROCKHILL HOMES LTD, LONGTIDE PROPERTIES LTD, VLMC INC, AMERICAN ROYALTIES LTD, AMERICAN
ROYALTIES-LA, LEWISVILLE 7 PARTNERS LTD, HUBEND 54 LTD, PARTNERSHIP EQUITY LTD
Filed in said Court on February 28th, 2017 Against
CHESAPEAKE ENERGY COPRORATION, CHESAPEAKE OPERATING INC, CHESAPEAKE OPERATING LLC, CHESAPEAKE ENERGY MARKETING INC,
TOTAL E&P USA INC, ACCESS MIDSTREAM, CHESAPEAKE EXPLORATION LP
For suit, said suit being numbered 048-290718-17 the nature of which demand is as shown on said
PLAINTIFFS' ORIGINAL PETITION  a copy of which accompanies this citation.

CRAIG M CROCKETT
Attorney for FLEET OIL AND GAS LTD Phone No. (817)810-0400
Address    5201 CAMP BOWIE BLVD STE 200 FORT WORTH, TX 76107

_____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 2nd day of March, 2017.

By *Anthony Ferrara*
ANTHONY FERRARA

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.
Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

### OFFICER'S RETURN  *04829071817000008*
Received this Citation on the _16_ day of _MARCH_ _2017_ at _1:00_ o'clock _P_M; and executed at
_1999 BRYAN ST. DALLAS_ within the county of _DALLAS_ , State of _TEXAS_ at _2:55_ o'clock _P_M
on the _16_ day of _MARCH_ _2017_ by delivering to the within named (Def.): _CHESAPEAKE ENERGY_
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION
, having first endorsed on same the date of delivery. _MARKETING INC. DELIVERED TO_
_KELVIN BENNETT AT REG.AGT. CT. CORPORATION SYSTEM_

_Authorized Person/Constable/Sheriff: *Jerry Caldwell* JERRY CALDWELL_ _SCH 9785_ _7-31-15_
County of _TARRANT_ State of _TEXAS_ By _____ Deputy

Fees $ _____
State of _TEXAS_ County of _TARRANT_ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _Jerry Caldwell_ before me this _17_ day of _MARCH 2017_
to certify which witness my hand and seal of office

CHRISTOPHER J. FIORE
Notary Public, State of Texas
Comm Expires 12-22-2019
Notary ID 11826697

County of _Tarrant_ , State of _TX_

## *CITATION*

Cause No. 048-290718-17

FLEET OIL AND GAS, LTD, ET AL

VS.

CHESAPEAKE ENERGY CORPORATION,
ET AL

ISSUED

This 2nd day of March, 2017

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By       ANTHONY FERRARA Deputy

CRAIG M CROCKETT
Attorney for: FLEET OIL AND GAS LTD
Phone No. (817)810-0400
ADDRESS: 5201 CAMP BOWIE BLVD STE 200

FORT WORTH, TX 76107

## *CIVIL LAW*

*0482907181700008*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

# EXHIBIT E-7

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

**ORIGINAL**

*CITATION*

*Cause No.* 048-290718-17

FILED
TARRANT COUNTY
3/17/2017 4:15:54 PM
THOMAS A. WILDER
DISTRICT CLERK

FLEET OIL AND GAS, LTD, ET AL
VS.
CHESAPEAKE ENERGY CORPORATION, ET AL

To and through the Secretary Of State, Statutory Documents Section, PO Box 12079, Austin TX 78711-2079
TO: TOTAL E&P USA INC

B/S CT CORPORATION SYSTEM REG AGT 1999 BRYAN ST STE 900 DALLAS, TX 75201-

SERVICE OF PROCESS MAY BE HAD UPON DEFENDANT BY DELIVERING TO THE SECRETARY OF STATE, OF THE STATE OF TEXAS, DUPLICATE
COPIES OF THIS CITATION TOGETHER WITH DUPLICATE COPIES OF THE PLAINTIFF'S PETITION ATTACHED HERETO.
You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 48th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFFS being

FLEET OIL AND GAS LTD, 5600 ROCKHILL HOMES LTD, LONGTIDE PROPERTIES LTD, VLMC INC, AMERICAN ROYALTIES LTD, AMERICAN
ROYALTIES-LA, LEWISVILLE 7 PARTNERS LTD, HUBEND 54 LTD, PARTNERSHIP EQUITY LTD
Filed in said Court on February 28th, 2017 Against
CHESAPEAKE ENERGY COPRORATION, CHESAPEAKE OPERATING INC, CHESAPEAKE OPERATING LLC, CHESAPEAKE ENERGY MARKETING INC,
TOTAL E&P USA INC, ACCESS MIDSTREAM, CHESAPEAKE EXPLORATION LP
For suit, said suit being numbered 048-290718-17 the nature of which demand is as shown on said
PLAINTIFFS' ORIGINAL PETITION  a copy of which accompanies this citation.

CRAIG M CROCKETT
Attorney for FLEET OIL AND GAS LTD Phone No. (817)810-0400
Address    5201 CAMP BOWIE BLVD STE 200 FORT WORTH, TX 76107

_____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and seal
of said Court, at office in the City of Fort Worth, this the 2nd day of March, 2017.

By *Anthony Ferrara*
ANTHONY FERRARA

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.
Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

**OFFICER'S RETURN *04829071817000009***

Received this Citation on the _16_ day of _MARCH_ , _2017_ at _1:00_ o'clock _P_ M; and executed at
_1999 BRYAN ST. DALLAS_ within the county of _DALLAS_ , State of _TEXAS_ at _2:55_ o'clock _P_ M
on the _16_ day of _MARCH_ , _2017_ by delivering to the within named (Def.): _TOTAL E+P USA INC_
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION
, having first endorsed on same the date of delivery _DELIVERED TO KELVIN BENNETT AT_
_REG. AGT. C.T. CORPORATION SYSTEM_

Authorized Person/Constable/Sheriff: _Jerry Caldwell_ JERRY CALDWELL  SCH 9786
County of _TARRANT_ , State of _TEXAS_ By _____ 7-31-18 , Deputy

Fees $ _____
State of _TEXAS_ County of _Dallas_                        (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _Jerry Caldwell_ before me this _17_ day of _MARCH 2017_
To certify which witness my hand and seal of office

County of _Dallas_ , State of _TX_

CHRISTOPHER J. FIORE
Notary Public, State of Texas
Comm. Expires 12-22-2019
Notary ID 11826697

# CITATION

Cause No. 048-290718-17

FLEET OIL AND GAS, LTD, ET AL

VS.

CHESAPEAKE ENERGY CORPORATION,
ET AL.

ISSUED

This 2nd day of March, 2017

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By          ANTHONY FERRARA Deputy

CRAIG M CROCKETT
Attorney for: FLEET OIL AND GAS LTD
Phone No.: (817)810-0400
ADDRESS: 5201 CAMP BOWIE BLVD STE 200

FORT WORTH, TX 76107

*CIVIL LAW*

*048290718170000009*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

# EXHIBIT E-8

048-290718-17

FILED
TARRANT COUNTY
3/23/2017 4:14:30 PM
THOMAS A. WILDER
DISTRICT CLERK

| | |
|---|---|
| **From:** | Craig Crockett |
| **To:** | Henry, Jennifer |
| **Cc:** | Glazer, Rachelle (Shelley) H; Curry, Greg W.; Haynes, Craig |
| **Subject:** | RE: Fleet Oil & Gas - |
| **Date:** | Thursday, March 23, 2017 2:48:06 PM |

Yes. I confirm my agreement pursuant to Rule 11 that that the Chesapeake Defendants' answer date is 4/10. If you need more time after that, I am happy to discuss another extension.

**Best Regards,**

**Craig M. Crockett**

THE CROCKETT FIRM
**5201 Camp Bowie Blvd. Suite 200**
**Fort Worth, Texas 76107**
**Telephone: 817-810-0400**
**Telecopier: 817-719-9450**
**Cell: 817-999-4112**
**E-Mail:** craig@crockettfirm.com
**Web:** www.crockettfirm.com

**IRS Circular 230 Notice:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**From:** Henry, Jennifer [mailto:Jennifer.Henry@tklaw.com]
**Sent:** Thursday, March 23, 2017 2:30 PM
**To:** Craig Crockett <craig@crockettfirm.com>
**Cc:** Glazer, Rachelle (Shelley) H <Rachelle.Glazer@tklaw.com>; Curry, Greg W. <Greg.Curry@tklaw.com>; Haynes, Craig <Craig.Haynes@tklaw.com>
**Subject:** Fleet Oil & Gas -

Craig,

When we spoke last week you said that you would give Defendants an extension of time to answer Plaintiffs' petition if requested. The Chesapeake Defendants were served with process on 3/16, making their answers due by 4/10, but there is some confusion because when you first filed the petition you sent us a courtesy copy and stated that you did not think service was necessary per the tolling agreement. To clear up this confusion, would you please respond and confirm your agreement that the Chesapeake Defendants' answer date is 4/10?

Thank you for your cooperation in this regard.

Jenny

**Jennifer P. Henry | Thompson & Knight LLP**
Partner

801 Cherry Street Unit #1, Burnett Plaza Suite 1600, Fort Worth, TX 76102
817-347-1733 (direct) | 214-999-1616 (fax) | 817-822-4394 (cell) |
jennifer.henry@tklaw.com
Vcard| http://www.tklaw.com/jennifer-henry/

This message may be confidential and attorney-client privileged. If received in error, please do not read. Instead, reply to me that you have received it in error and delete the message.

# EXHIBIT E-9

048-290718-17

FILED
TARRANT COUNTY
3/29/2017 11:33:46 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 048-290718-18

| | | |
|---|---|---|
| FLEET OIL AND GAS LTD., | § | IN THE DISTRICT COURT |
| 5600 ROCKHILL HOMES, LTD., | § | |
| LONGTIDE PROPERTIES, LTD., | § | |
| VLMC INC., AMERICAN ROYALTIES, | § | |
| LTD., AMERICAN ROYALTIES-LA, | § | |
| LEWISVILLE #7 PARTNERS, LTD., | § | |
| HUBEND 54, LTD. and | § | |
| PARTNERSHIP EQUITY, LTD., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | TARRANT COUNTY, TEXAS |
| | § | |
| CHESAPEAKE ENERGY | § | |
| CORPORATION, CHESAPEAKE | § | |
| OPERATING, INC., CHESAPEAKE | § | |
| OPERATING, L.L.C., CHESAPEAKE | § | |
| EXPLORATION, L.L.C. as successor by | § | |
| merger to CHESAPEAKE | § | |
| EXPLORATION, L. P., | § | |
| CHESAPEAKE ENERGY MARKETING, | § | |
| INC., and TOTAL E&P USA, INC., | § | |
| | § | 48TH JUDICIAL DISTRICT |
| Defendants. | § | |

## THE CHESAPEAKE DEFENDANTS' ORIGINAL ANSWER

Defendants Chesapeake Energy Corporation ("CEC"), Chesapeake Operating, Inc.,

correctly known as Chesapeake Operating, L.L.C. ("COLLC"), Chesapeake Exploration, L.L.C.

("CELLC"), and Chesapeake Energy Marketing, Inc., correctly known as Chesapeake Energy

Marketing, L.L.C. (collectively the "Chesapeake Defendants") file this Original Answer in

response to the claims asserted by Plaintiffs Fleet Oil And Gas Ltd., 5600 Rockhill Homes, Ltd.,

Longtide Properties, Ltd., VLMC Inc., American Royalties, Ltd., American Royalties-La,

Lewisville #7 Partners, Ltd., Hubend 54, Ltd. and Partnership Equity, Ltd. ("Plaintiffs") in their

Original Petition ("Petition") and state as follows:

THE CHESAPEAKE DEFENDANTS' ORIGINAL ANSWER — Page 1
522221 000568 19240212.2

## I.

## GENERAL DENIAL

1.　　As authorized by Texas Rule of Civil Procedure 92, the Chesapeake Defendants generally deny all material allegations contained in Plaintiffs' Petition and demand strict proof thereof per the applicable burden of proof for each fact issue.　The Chesapeake Defendants reserve the right to amend their pleadings as this case is further developed.

## II.

## AFFIRMATIVE DEFENSES AND SPECIFIC DENIALS

2.　　Plaintiffs' claims fail in whole or in part under one or more of the following doctrines: estoppel, quasi-estoppel, equitable estoppel, ratification, and waiver.　Regarding the quasi-estoppel defense, the Chesapeake Defendants plead the element of unconscionability.　It would be unconscionable to permit Plaintiffs to assert a right that is inconsistent with a benefit Plaintiffs accepted.

3.　　Plaintiffs' claims fail in whole or in part under the applicable statutes of limitations and laches.　The discovery rule, fraudulent concealment, and quasi-estoppel do not apply to defer the accrual of, or toll the statutes of limitations for, Plaintiffs' claims.[1]　Further, the defense of fraudulent concealment also does not apply because Plaintiffs' tort claims fail as a matter of law.[2]

4.　　The Chesapeake Defendants plead the defenses of payment, offset, credit and/or recoupment.

5.　　Plaintiffs' claims fail in whole or in part under the statute of frauds and the parol evidence rule.

---

[1] *See, e.g., Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001).

[2] *See Hodges v. Rajpal*, 459 S.W.3d 237, 246 (Tex. App.—Dallas 2015, no pet.).

6.     The Chesapeake Defendants invoke the applicability of the settlement credit provisions contained in Chapters 32 and 33 of the Texas Civil Practice and Remedies Code. The Chesapeake Defendants are entitled to a settlement credit under Chapters 32 and 33 for any settlement amounts paid to Plaintiffs by any defendant or any other person or entity relating to any cause of action to which the settlement credit provisions under Chapters 32 and 33 apply.

7.     Plaintiffs' claims are barred or limited by the one satisfaction rule.  Under the one-satisfaction rule, the Chesapeake Defendants are entitled to a settlement credit offsetting any damages by any amounts that any settling defendant pays or has paid to Plaintiffs.[3]

8.     Plaintiffs are not entitled to recover their attorneys' fees from the Chesapeake Defendants that are limited liability companies because Section 38.001 of the Texas Civil Practice and Remedies Code does not allow a party to recover its attorneys' fees from a limited liability company.[4]

9.     In accordance with Texas Rule of Civil Procedure 54, the Chesapeake Defendants specifically deny that all conditions precedent to Plaintiffs' right to recovery have occurred, or are excused from occurring, including proper presentment of the claims.

10.     The allegations in Plaintiffs' Petition fail to state a claim upon which relief can be granted.

11.     The Chesapeake Defendants plead the defense of repudiation and contractual disclaimer with respect to Plaintiffs' lease termination claim.

12.     The Chesapeake Defendants plead the applicability of § 2.21 of the Texas Business Corporation Act regarding no liability of subscribers, shareholders, and affiliates.

---

[3] *See Allan v. Nersesova,* 307 S.W.3d 564, 574 (Tex. App.—Dallas 2010, no pet.).

[4] *See Hoffman v. L & M Arts,* No. 3:10-CV-0953-D, 2015 WL 1000838, at *10 (N.D. Tex. March 6, 2015).

13.     Plaintiffs' claims are barred or limited under Texas Business Organizations Code sections 21.223 and 21.224 and Oklahoma Statute title 12 sec. 682 (West 2014).[5]

14.     The Chesapeake Defendants specifically deny responsibility for punitive or exemplary damages.  If this Court finds that such damages are recoverable, such exemplary damages are limited by Texas Civil Practice and Remedies Code section 41.008, and in addition, Plaintiffs cannot recover any punitive damages that are constitutionally excessive.  Chesapeake Defendants invoke all limitations, requirements, and protections provided in Texas Civil Practice and Remedies Code chapter 41, including without limitation, the requirement that Plaintiffs prove by clear-and-convincing evidence the right to recover and the elements of exemplary damages.  Chesapeake Defendants contend that the correct burden of proof under constitutional principles is "beyond a reasonable doubt," but at a minimum, the standard is clear-and-convincing evidence, as required by chapter 41.

15.     Plaintiffs' claims sound only in contract, and Plaintiffs cannot recover tort damages of any kind, whether actual or exemplary.  Further, punitive damages are not available in Texas for breach-of-contract claims.  It is well settled that punitive damages are not available for breach of oil and gas leases, such as the ones in this case.[6]

16.     Awarding punitive damages would violate the Chesapeake Defendants' constitutional rights, including their rights to equal protection and due process under Article I, Sections 3, 13, and 19 of the Texas Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.  Awarding punitive damages would also be an unconstitutional

---

[5] *See Ogbonna v. USPLabs, LLC,* No. EP-13-CV-347, 2014 U.S. Dist. LEXIS 79001, at *14 (W.D. Tex. June 10, 2014) ("Under Texas's choice-of-law rules, whether a corporation, LLC, or individual may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized.")

[6] *See Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563 (Tex. 1981) and its progeny.

taking under Article I, Section 17 of the Texas Constitution.   In addition, awarding punitive damages would violate the prohibitions against excessive fines and cruel or unusual punishment under Article I, Section 13 of the Texas Constitution and the Eighth Amendment to the United States Constitution.   Among other things, awarding punitive damages would be a constitutional violation, because:

    a.    Texas law regarding punitive damages is unconstitutionally vague and does not provide sufficient notice of the conduct that could be punished and the severity of the punishment;

    b.    The unconstitutional vagueness of Texas law results in arbitrary and discriminatory awards;

    c.    Texas law does not provide adequate substantive and procedural safeguards to prevent arbitrary, excessive, and unconstitutional awards;

    d.    Texas law does not provide adequate and meaningful guidance to fact finders when they award punitive damages, leaving such awards to arbitrary determinations by the fact finders;

    e.    Texas law does not require that liability for and the amount of punitive damages be proven beyond a reasonable doubt;

    f.    Punitive damages are a windfall to plaintiffs, making such damages an unconstitutional taking; and

    g.    Punitive damages are not available for lawful conduct inside of Texas, for conduct outside of Texas, for conduct that has already been punished, for the conduct of another party, or for harm to others besides the plaintiff.

17.   Plaintiffs claims are barred to the extent Plaintiffs have or will unreasonably withheld consent to the assignments at issue.

18.   Plaintiffs' claims fail in whole or in part to the extent CELLC's interest in the leases is freely assignable.   All assignments were of CELLC's interest in the Lease and/or CELLC's interest in production from the wells at issue.   Because those assignments did not affect Plaintiffs' interest, Plaintiffs have no power or standing to prevent or void any assignments

by CELLC of CELLC's interest in the leases or CELLC's interest in production from the wells at issue.

19.     Plaintiffs' claims concerning consent to assignments are an unreasonable restraint on alienation of property.

20.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of actual, apparent, and/or implied consent.

21.     Plaintiffs' claims regarding the assignments are barred, in whole or in part, by the doctrine of waiver. Specifically, Plaintiffs intentionally waived their rights to enforce any consent-to-assignment provision in the operative leases by accepting the benefits of the assignments and through Plaintiffs' prolonged inaction.

22.     Plaintiffs' claims fail in whole or in part under the independent injury rule.

23.     Plaintiffs' lack standing to bring claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.§ 1962(d).

## IV.

## PRAYER

WHEREFORE, the Chesapeake Defendants pray that Plaintiffs take nothing and that the Chesapeake Defendants recover general and all other relief to which they may show themselves entitled.

Respectfully submitted,

*/s/ Craig A. Haynes*
Craig A. Haynes
State Bar No. 09284020
craig.haynes@tklaw.com

Greg W. Curry
State Bar No. 05270300
greg.curry@tklaw.com

**THE CHESAPEAKE DEFENDANTS' ORIGINAL ANSWER — Page 6**
522221 000568 19240212.2

Rachelle H. Glazer
State Bar No. 09785900
rachelle.glazer@tklaw.com

THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX  75201
Telephone:  (214) 969-1700
Facsimile:  (214) 969-1751

Jennifer P. Henry
State Bar No. 15859500
jennifer.henry@tklaw.com

THOMPSON & KNIGHT LLP
Burnett Plaza, Suite 1600
801 Cherry Street, Unit #1
Fort Worth, Texas 76102
Telephone:  (817) 347-1733
Facsimile:  (214) 999-1616

ATTORNEYS FOR
CHESAPEAKE DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2017, a copy of this document was filed electronically with the Clerk of Court by using the eFileTexas.gov system, which will send a notice of electronic filing to all counsel of record who have registered to receive electronic service, and that all other counsel of record have been served in accordance with the Texas Rules of Civil Procedure.

/s/ Jennifer P. Henry
Jennifer P. Henry

# EXHIBIT E-10

048-290718-17

FILED
TARRANT COUNTY
3/29/2017 3:26:56 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 048-290718-17

| | | |
|---|---|---|
| FLEET OIL AND GAS LTD., 5600 ROCKHILL HOMES, LTD., LONGTIDE PROPERTIES, LTD., VLMC INC., AMERICAN ROYALTIES, LTD., AMERICAN ROYALTIES-LA, LEWISVILLE #7 PARTNERS, LTD., HUBEND 54, LTD., AND PARTNERSHIP EQUITY, LTD., | § § § § § § § § § § | IN THE DISTRICT COURT |
| *PLAINTIFFS,* | § § | |
| v. | § § | TARRANT COUNTY, TEXAS |
| CHESAPEAKE ENERGY CORPORATION, CHESAPEAKE OPERATING, INC., CHESAPEAKE OPERATING, L.L.C., CHESAPEAKE EXPLORATION, L.L.C., AS SUCCESSOR BY MERGER TO CHESAPEAKE EXPLORATION, L.P., CHESAPEAKE ENERGY MARKETING, INC., AND TOTAL E&P USA, INC., | § § § § § § § § § § § | |
| *DEFENDANTS.* | § | 48TH JUDICIAL DISTRICT |

## DEFENDANT TOTAL E&P USA, INC.'S ORIGINAL ANSWER

Defendant TOTAL E&P USA, Inc. ("TEPUSA") files its Original Answer to the Petition

of Fleet Oil and Gas Ltd., 5600 Rockhill Homes, Ltd., Longtide Properties, Ltd., VLMC Inc.,

American Royalties, Ltd., American Royalties-LA, Lewisville #7 Partners, Ltd., Hubend 54,

Ltd., and Partnership Equity, Ltd. ("Plaintiffs") and, in support thereof, respectfully shows this

Honorable Court as follows:

### I.   GENERAL DENIAL

Pursuant to Texas Rule of Civil Procedure 92, TEPUSA generally denies each and every

material allegation and contention set forth in Plaintiffs' Original Petition and any amendment

thereto, and hereby demands strict proof of the same.

## II.   <u>PRAYER</u>

**WHEREFORE,** TEPUSA prays that Plaintiffs take nothing by their suit, that TEPUSA be reimbursed its costs incurred in defending against such claims, and that TEPUSA has such other and further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

**WINSTEAD PC**

By: _/s/ Jeffrey C. King_
    Jeffrey C. King (Lead Counsel)
    State Bar No. 11449280
    jking@winstead.com
    Jamie Lavergne Bryan
    State Bar No. 24026983
    jbryan@winstead.com
    Adam L. Plumbley
    State Bar No. 24056146
    aplumbley@winstead.com
    300 Throckmorton Street, Suite 1700
    Fort Worth, Texas 76102
    Telephone: 817.420.8200
    Facsimile: 817.420.8201


    David H. Ammons
    State Bar No. 24040426
    dammons@winstead.com
    1100 JPMorgan Chase Tower
    600 Travis Street
    Houston, Texas 77002
    Telephone: 713.650.8400
    Facsimile: 713.650.2400

**ATTORNEYS FOR DEFENDANT
TOTAL E&P USA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2017 a copy of the above and foregoing has been served electronically by using the eFileTexas.gov system, which will send a notice of electronic service to all counsel of record who have registered to receive electronic service, and that Plaintiffs' counsel have additionally been served by email.


_____ /s/ _Adam L. Plumbley_ _____
Adam L. Plumbley